[S. F. No. 10082.   In Bank.—August 14, 1922.]

## JAMES BELL, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

[1] RAILROADS—FEDERAL CONTROL—DAMAGES TO PROPERTY—PARTY DEFENDANT.—In an action against a railroad company for damages for the killing of horses while the railroad was under federal control, it was error to deny the motion of the defendant for substitution of the Director General of Railroads in its place and stead in accordance with his general order No. 50, requiring such suits to be brought against him by name.

[2] ID.—KILLING OF DOMESTIC ANIMALS—INSUFFICIENT FENCES—NONLIABILITY OF RAILROAD COMPANY UNDER CODE.—A railroad company is not liable under section 485 of the Civil Code for loss or damage to domestic animals occurring while the railroad was under federal control, notwithstanding the legal construction of such section imposing such liability on a lessor company, since complete, and not divided, possession and control were given the United States by the Federal Control Act of March 28, 1918.

[3] ID.—APPEAL—SUBSTITUTION OF DEFENDANTS—UNAUTHORIZED PROCEDURE.—On an appeal from a judgment against a railroad company for the killing of horses while the railroad was under federal control, the court cannot, without any further proceedings, make an order substituting the Director General of Railroads as defendant in the action, in the place and stead of the railroad company, as it, in effect, would be affirming a judgment against a party who has not had a day in court.

[4] ID.—FINDING—NEGLIGENCE OF DEFENDANT—FAILURE TO MAINTAIN FENCES—IMMATERIALITY—JUDICIAL NOTICE.—On such an appeal, the finding that the defendant was negligent in failing to maintain its fences on January 28, 1918, is not conclusive on the defendant, since the court will take judicial notice of the fact that at that time the railroads within the boundaries of the United States were under federal control.

APPEAL from a judgment of the Superior Court of Santa Clara County. W. A. Beasly, Judge. Reversed.

The facts are stated in the opinion of the court.

Louis Oneal and Henley C. Booth for Appellant.

Rea, Cassin & Caldwell for Respondent.

MYERS, J., *pro tem.*—Upon further consideration we are satisfied with, and hereby adopt, as part hereof, the following opinion herein of the district court of appeal for the first district, written by Mr. Justice Waste:

"This is an appeal by the defendant from a judgment of the lower court awarding plaintiff $1000 damages, and costs, for the killing of certain horses. The cause of action was based upon the alleged failure of the defendant to maintain good and sufficient fences along its right of way, by reason of which the animals were allowed to go on the track of the railroad where they were struck and killed by a train, operated, so the plaintiff alleged, by the servants and employees of the defendant.

"The action was brought directly against the Southern Pacific Company as sole defendant. In its answer the Company denied that it was operating the railroad at the time of the accident, and alleged that the road and fences along its right of way were under the jurisdiction, and in charge of the United States Railroad Administration, and that all persons employed on the train were in the service of the Administration, which had exclusive control over them. It further alleged that at the time all persons engaged in such operative work, and in maintaining the roadbed, and appurtenances thereto, were acting as servants, agents and employees, of the United States government. It disclaimed all responsibility for the claim of the plaintiff, which, it asserted, was a liability of the Railroad Administration. In due course the defendant made a motion for the substitution of the Director General of Railroads, as defendant in its place and stead, which was denied. Upon denial of the motion there was presented a bill of exceptions, which appears in the transcript and as part of the judgment-roll.

[1] "The motion for substitution should have been granted. On December 26, 1917, the President of the United States issued a proclamation by which the Secretary of War was authorized and directed to take possession, and assume control of all railroads within the boundaries of the United States on December 28th, following. On March 28, 1918, an act to provide for the operation of transportation systems while under federal control, was approved, and on March 29th the President issued his proclamation directing the

Director General of Railroads to exercise the powers conferred by that act. The Director General thereupon issued general order No. 50, providing that all actions thereafter brought for loss or damage to property caused by the operation of railroads, arising during federal control after December 31, 1917, should be brought against the Director General direct. The order also provided that in those actions already brought, for a cause of action accruing after December 31, 1917, but arising under federal control, the defendant company might, on motion, have the Director General of Railroads substituted in its place, and be itself dismissed from further proceedings.

"The cause of action here sued upon arose after December 31, 1917, and the action itself was brought on November 4, 1918, after the promulgation of general order No. 50. At the time the motion for substitution was made Walker D. Hines was the Director General of Railroads, and should have been substituted in the place and stead of the defendant Southern Pacific Company, which ought to have been dismissed from the action. (*Missouri Pac. R. R.* v. *Ault,* 256 U. S. 554 [65 L. Ed. 1087, 41 Sup. Ct. Rep. 593, 596]; *Nash* v. *Southern Pacific Co.,* 260 Fed. 280, 287; *Western Union Tel. Co.* v. *Poston,* 256 U. S. 662 [65 L. Ed. 1157, 41 Sup. Ct. Rep. 598, 599].) In the first of these cases the Supreme Court of the United States critically analyzed the exact situation presented by the instant case, and definitely decided that under the Federal Control Act, *supra,* as a matter of law, the government or its agency for the operation of the railroad could be sued, as, under the statute, the legal person in control of the carrier was responsible for its acts. The title by which suit should be brought—the person who should be named as defendant—not being designated in the act, 'it was perhaps natural,' said the court, 'that those wishing to sue the carrier should have named the company as the defendant when they sought to hold the government liable. . . . All doubt as to how suit should be brought was cleared away by General Order No. 50, which required that it be against the Director General by name.' The court held that application of the railroad company, that it be dismissed from the action, should have been granted, and the judgment against in was reversed.

[2] "Notwithstanding this clear definition of the sole liability of the Director General of Railroads, in such cases, the respondent seeks to maintain the action against the defendant as owner of the railroad, under the provisions of section 485 of the Civil Code. That section requires a railroad corporation to make and maintain a good and sufficient fence on both sides of its track and property, failing in which the company must pay for cattle, or other domestic animals killed by its engine or cars, unless the injury occurred through the neglect or fault of the owner of the animals killed. Construing that section, the supreme court held that even though a railroad company had leased its road and rolling stock to another company, it remained liable for cattle killed by the train of the lessee on the unfenced portions of the lessor's railroad. (*Fontaine* v. *Southern Pacific Co.,* 54 Cal. 645, 652.) Respondent attempts to apply the effect of that decision to the appellant in the instant case. The effort must fail. No divided, but complete possession and control, were given the United states for all purposes as to the railroads dealt with by the Federal Control Act. The Railroad Administration does not exercise its control through supervision of the owner company of the railroad, but by means of a Director through 'one control, one administration, one power, for the accomplishment of the one purpose, the complete possession by governmental authority to replace for the period provided, the private ownership theretofore existing.' (*Missouri Pac. R. R.* v. *Ault, supra; Northern Pacific Ry. Co.* v. *North Dakota,* 250 U. S. 135, 148 [63 L. Ed. 897, 39 Sup. Ct. Rep. 502].)

[3] "The respondent asks that this court, without any further proceedings, make an order substituting the Director General of Railroads as defendant in the action, in the place and stead of the Southern Pacific Company, and then affirm the judgment. If that were done, it would, in effect, be affirming a judgment against a party who has not had a day in court. A judgment binding upon the government under such circumstances could not be obtained. (*Nash* v. *Southern Pacific Co., supra,* 260 Fed. 286.)"

It is earnestly urged that the district court opinion failed to give due consideration to the decision of this court in the Fontaine case, *supra,* and virtually overrules it. But there is a clear ground of distinction between the two cases,

in this, that in the Fontaine case the defendant, by leasing its railroad, had *voluntarily* disabled itself to perform the duty of maintaining fences, imposed upon it by law, whereas in the instant case the defendant was so disabled by the act of government, *without the defendant's act, fault or consent.*

The Fontaine case is but an application of a well-recognized principle of law to the effect that a party upon whom rests an affirmative duty imposed by law for the protection of others cannot escape liability for the nonperformance thereof merely by showing that he has delegated another to perform it for him.

The instant case, on the other hand, is an application of the converse of that rule, namely, that the nonperformance of such a duty is always excused by a showing that performance thereof was prevented, either by an "act of God" or by the intervention of *vis major,* without the act, fault or consent of the party sought to be charged.

[4] But, it is said, the trial court found as a fact that the defendant was negligent in failing to maintain its fences on January 28, 1918, and that this finding cannot now be questioned because there is no specification of insufficiency of evidence to support it. We think that it is so attacked by specifications No. 1 and No. 2. But, even if it were unassailed, this finding would be of no avail to the plaintiff. Courts take judicial notice of the public and private official acts of the legislative, executive and judicial departments of the United States. (Code Civ. Proc., sec. 1875, subd. 3.) It is not necessary to allege or prove facts which are so noticed, from which it follows that allegations, or proofs, or findings to the contrary thereof must be disregarded by the court. (*French* v. *Senate,* 146 Cal. 604, 607, 608 [2 Ann. Cas. 756, 69 L. R. A. 556, 80 Pac. 1031]; *People* v. *Mayes,* 113 Cal. 618, 625 [45 Pac. 860].)

The case of *Bryson* v. *Hines,* 268 Fed. 290 [11 A. L. R. 1438], is not in point here. That action was predicated upon the affirmative negligence of the railroad company in constructing "a grossly and obviously unsafe track," knowing it was to be used for the transportation of troops, which affirmative negligence was the proximate cause of the injury. In the instant case, if it be conceded as claimed, that the railroad company was negligent in failing to properly maintain its fences at some time in 1917, there is no

causal connection shown between such failure and the subsequent failure of the government to maintain them in 1918, after it had taken control. The failure to maintain fences in 1917, though a violation of law, conferred no right of action upon plaintiff. It was the injury to his horses on January 28, 1918, due to the absence of fences on that date which gave rise to his cause of action.

The judgment is reversed.

Sloane, J., Shaw, C. J., and Lennon, J., concurred.