[Civ. No. 8324. Third Dist. Dec. 3, 1952.]

U. B. MARR, as Probation Officer, etc., et al., Petitioners, v. SUPERIOR COURT OF SISKIYOU COUNTY, Respondent.

Robnett & Wilson for Petitioners.

Tebbe & Correia for Respondent.

Edmund G. Brown, Attorney General, and Richard L. Mayers, Deputy Attorney General, as Amici Curiae on behalf of Department of Social Welfare.

VAN DYKE, J.—This is a proceeding in prohibition. On May 23, 1951, a child was born in the State of Washington to an unwed mother who, within a few days after the birth of the infant, executed a consent to its adoption by Clifford L. and Estelle Grove, residents of California. The consent was executed in accordance with the laws of Washington, but not in accordance with the laws of California. Mr. and Mrs. Grove brought the child to their home in Siskiyou County, in which county they then resided. On July 15, 1951, they filed in the superior court of that county a petition for the adoption of the child. While the adoption proceedings were pending, the mother changed her mind concerning adoption, asserting that the consent form had been executed by her under misunderstanding and mistake. She came to California to claim her child. By that time the Groves were residing in the county of Modoc. On February 5, 1952, petitioner here, who is the probation officer of the county of Modoc, filed in the juvenile court of that county his petition to have the child declared a ward of the juvenile court. The mother appeared at the hearing of the petition, represented by counsel, and the juvenile court on February 8th declared the child a ward of the court, finding that it came within the provisions of subdivision (b) of section 700 of the Welfare and Institutions Code. It was ordered that the child be committed to petitioner Marr as probation officer to be by him placed with Mr. and Mrs. Grove. No appeal was taken by the mother from the order of the juvenile court and the same became final. The Groves still have the infant. The State Department of Social Welfare investigated the adoption matter and on July 31, 1952, reported to the Superior Court of Siskiyou County, recommending that the petition for adoption be denied and that the child be returned to the care and custody of the mother. While re-

porting favorably upon petitioners for adoption, the department found that the consent of the mother had not been executed in accordance with California law and that therefore the minor was not legally free for adoption. The department withheld its consent. On July 15, 1952, the child's mother asked the court in the adoption proceedings to order Mr. and Mrs. Grove to show cause therein why the proceedings should not be dismissed and the child delivered to her. She supported the application by an affidavit asserting that she had never consented to the adoption of her child in the manner and form provided by the California Civil Code and that it would be for the child's best interest that it be delivered to her so she might take it to her residence in Washington. The order asked was issued, the court acting through Honorable Claude E. Gillis, judge pro tempore. Mr. and Mrs. Grove were ordered to produce the child in court "there to be disposed of as may be directed." Between the service upon them of the order to show cause and the date of the hearing thereof, Mr. and Mrs. Grove filed in the adoption proceedings their written consent to the dismissal thereof and served and filed also notice of motion to dismiss the same. In support of the motion they brought to the attention of the Siskiyou court all of the proceedings in the juvenile court of Modoc County. They took the position, and so informed the Siskiyou County court by affidavit filed therein, that it was beyond their right and power to produce the child without an order of the juvenile court permitting them so to do. Mr. and Mrs. Grove did not appear at the hearing of the order to show cause. Their attorneys appeared, introduced in evidence a certified copy of the juvenile court order and presented and argued their motion to dismiss the adoption proceedings in view of the lack of consent to adoption. They objected on jurisdictional grounds to the court's hearing the order to show cause or taking any action thereunder save to grant the prayer of the mother for the dismissal of the adoption proceedings. The court proceeded to hear the order and took the same under submission. Thereafter the court took the following action: It made an order awarding the child to the mother and ordered Mr. and Mrs. Grove to deliver it to her. It adjudged the Groves to be in contempt for failure to produce the child in court. It ordered that for that contempt they be committed to the Sheriff of Siskiyou County until they should produce the child before the court and in any event until the expira-

tion of five days; further that each pay a fine of $100 or on failure thereof be confined in the county jail one day for each $2.00 of such fine. Finally, the court decreed that when the child should have been so delivered, the commitment for contempt completed and the fines paid, the adoption proceedings should "stand dismissed." Marr, the probation officer, and Mr. and Mrs. Grove thereupon petitioned this court for an alternative writ of prohibition, directed to the Superior Court of Siskiyou County staying all said proceedings, which writ was issued. It is apparent from the foregoing that the custodial orders made by the respondent court immediately and totally conflict with the like orders of the juvenile court of Modoc County. There is presented, therefore, the question of which of the conflicting orders is paramount.

█ The respondent court first takes the position that its orders could not conflict with those of the juvenile court because the decree of that court adjudging the minor child to be its ward was void for want of jurisdiction. It places this contention upon the ground that the petition filed by Probation Officer Marr in the juvenile court, though containing all other allegations necessary under the statute, omitted an allegation that the minor stood in need of parental control. The same defect appears in the decree. While the court found that the child was within the county of Modoc, was a person of the age of 8 months, had no parent or legally appointed guardian actually exercising proper parental care over her and was a person coming under the provisions of subdivision (b) of section 700 of the Welfare and Institutions Code, yet it omitted any express finding that the infant stood in need of parental control. Respondent's contention cannot be sustained. When it is alleged and found as to an 8 months' old child that it has no parent or legally appointed guardian actually exercising proper parental control, it can be inferred therefrom that such an infant is in need of such control. Such a matter is one of judicial notice.

█ Parental control means such control as parents ordinarily exercise and the phrase carries with it the implication of the purpose of parental control over such an infant, that is, its proper care and support, the usual incidents of the exercise of control over it. █ Matters of judicial knowledge need not be alleged or found. (*French* v. *Senate of California*, 146 Cal. 604, 607 [80 P. 1031, 2 Ann.Cas. 756, 69 L.R.A. 556], and *Bell* v. *Southern Pac. Co.*, 189 Cal. 421, 425 [208 P. 970].) █ Moreover, nicety of procedure is not

required in juvenile court matters. (*In re Marmaduke,* 114 Cal.App. 278, 282 [299 P. 835].) As the court there said: ". . . In the case entitled *In re Gutierrez,* 46 Cal.App. 94, 96 [188 P. 1004], it is held that, 'even where the petition is obviously open to demurrer for an insufficient statement of the facts, if it appears from the declarations that there is a purported or attempted statement of facts which would confer jurisdiction, the question as to such sufficiency of statement will not be examined into on *habeas corpus.*' "

Because the adoption proceedings were pending in the respondent court at the time the juvenile court of Modoc County declared the infant to be its ward it is contended that the respondent court had jurisdiction to dispose of the matter of the child's custody if and when it should dismiss the petition for adoption. Respondent court relies particularly on the provisions of section 226b of the Civil Code, which section provides in substance that, whenever in any adoption proceeding the petitioner desires to withdraw the petition or to dismiss the proceedings, the court, notwithstanding such withdrawal or dismissal, "may retain jurisdiction over the child for the purpose of making such order or orders for its custody as the court may deem to be in the best interests of the child." We think these provisions of the code do not prevent a juvenile court from assuming custody of a minor in a proper case. Section 700 of the Welfare and Institutions Code declares that the jurisdiction of a juvenile court extends to any person under the age of 21 years who comes within certain classifications therein set forth, one of which is that of a person who has no parent or guardian actually exercising proper parental control and who is in need thereof. Section 730 provides that when proceedings are initiated to declare a person a ward of the juvenile court the minor may be kept upon order of the court in such suitable place as the court may direct until the final disposition of the case. Section 735 requires that when such person is found to come within the provisions of section 700 the court shall adjudge such person to be its ward and make such orders as may be necessary for its care. We think these and related provisions of the code constitute a statutory plan which for its fulfillment requires that when a juvenile court has adjudged an infant to be its ward then the orders of that court concerning the physical custody, control and care of its ward supersede for so long as necessary any existing orders of other courts made in custodial matters which conflict therewith and that this situa-

tion also makes void custodial orders of other courts thereafter made which interfere with the exercise by the juvenile court of such full control over the minor as is proper in order that it may perform the duties it owes to its ward. When it enacted the juvenile court law the Legislature was concerned with matters differing markedly from custodial proceedings in other courts which do not ordinarily concern themselves further than to award custody to certain persons and then to exercise supervisory control through continued jurisdiction. Under the juvenile court law, however, it was intended that the court itself, acting under the doctrine of *parens patriae* should assume, for so long as it deems necessary and to the extent it deems necessary, the complete physical custody, control and care of the person which it declares to be its ward. It was not intended that during the existence of that wardship such matters should be interfered with in any way by custodial orders of other courts. Whether the respondent court during the pendency or upon the dismissal of the adoption proceedings could either pendente lite or finally make any order concerning the custody and control of the ward of the juvenile court is beside the point here. Whatever its general powers might be, the assumption of physical control of the ward by the juvenile court through its officer, petitioner Marr, and its agents, petitioners Grove, was, to the extent necessary, the assumption of an exclusive jurisdiction such as to completely exclude, pro tempore, the conflicting operation of any other court's orders. That was the situation existing when the respondent court made its order to show cause. In so far as by that order it sought to compel the production of the infant before it, it was attempting to interfere with the exclusive jurisdiction of the juvenile court. This it could not do. Before it took action purporting to order the delivery of the infant to its mother, and finding petitioners Grove in contempt, it was fully acquainted with the fact and extent of the jurisdiction and control of the juvenile court. Its orders could not be carried out without interfering with the orders of that court. The disobedience of petitioners Grove to its order to produce the infant before it, in order, as it said, that it might dispose of its custody, would have involved a breach of the orders of the juvenile court and was therefore justified. ■ One accused of contempt for disobeying an order may purge himself by showing that the order is void or unlawful. (5 Cal.Jur. 918.)

Other matters are argued in the briefs but since the foregoing adequately disposes of the merits it is unnecessary to discuss them.

The orders of respondent court purporting to presently award custody and control of the child to its mother and directing petitioners Grove to deliver the child to her, adjudging petitioners Grove to be in contempt and decreeing their punishment therefor are all annulled.

The respondent court ordered that when the child had been delivered to its mother and petitioners Grove should have undergone the decreed penalty for their contempt the adoption proceedings should stand dismissed. Since we have annulled these orders there is nothing to prevent the dismissal taking immediate effect.

Let a permanent writ issue in accordance herewith.

Peek, J., and Schottky, J. pro tem., concurred.