[Civ. No. 20565. First Dist., Div. Two. Feb. 18, 1963.]

AMELIA SLEVATS, Plaintiff and Appellant, v. IRVIN C. FEUSTAL, Defendant and Appellant.

Lew M. Warder, Jr., for Plaintiff and Appellant.

Bernal & Bernal, Bernal, Rigney & Bernal, Joseph W. Bernal, Jean Bernal and C. Victor Hess for Defendant and Appellant.

AGEE, J.—Defendant has appealed from an order partially denying his motion to quash and recall a writ of execution. Plaintiff has appealed from that portion of said order partially granting said motion.

*Background.* This action was brought by plaintiff, under the provisions of section 196a of the Civil Code, on behalf of her daughter, who was born April 15, 1945. Judgment was entered February 18, 1949, decreeing that defendant is the father of said child, and ordering him to pay to plaintiff the sum of $65 per month for the child's support, commencing February 1, 1949. This judgment was never appealed from nor modified in any way except as affected by the juvenile court proceedings hereafter discussed.

On August 27, 1954, plaintiff was committed to Napa State Hospital as a mentally ill person. On November 8, 1954, the child was declared to be a ward of the juvenile court under what was then section 700 subdivision (b) of the Welfare and Institutions Code. The juvenile court ordered defendant to pay the sum of $60 per month, commencing November 8, 1954, to the Probation Officer of Alameda County "to reimburse said County for the money so paid for the support and maintenance of said ward."

On December 24, 1955, the mother, who was on a leave of absence from the hospital, was permitted by court order to have the child with her over Christmas. She did not return the child to the foster home, as directed by the order.

On January 25, 1956, the probation officer reported to the court that a letter had been received from plaintiff, dated December 27, 1955, and mailed from Phoenix, Arizona, stating that she "was taking the girl East." The court thereupon ordered support payments discontinued as of December 24, 1955.

On October 7, 1957, the probation officer recommended that the proceedings be dismissed because the child's whereabouts were unknown and further supervision by the juvenile court appeared to be unwarranted. In accordance with this recommendation, an order of dismissal was made the same

day. The record is uncontradicted that defendant made all of the support payments ordered by the juvenile court.

*Writ of Execution.* On December 8, 1960, plaintiff filed an affidavit herein in which she alleged that ''defendant has not paid the payment due January 1, 1956, or any payment due thereafter; that the total sum of $3,900.00 is due and payable pursuant to said judgment [of February 18, 1949] through the payment due December 1, 1960.''

Pursuant to an ex parte order based upon plaintiff's affidavit, a writ of execution was issued in said amount of $3,900. The writ was also entered as a judgment on December 8, 1960. Defendant moved to set aside this judgment and to quash the writ on the ground that it was void and on the further ground that it should be recalled because of the inequitable circumstances of its issuance. After an extended hearing, the motion was granted as to any amount over $2,470 but was otherwise denied.

The lower court filed a ''Memorandum of Decision,'' in which it stated: ''It would appear to the Court that under the law the jurisdiction of the Juvenile Court supercedes the jurisdiction of another department of the Superior Court (*Marr* v. *Superior Court,* 114 Cal.App.2d 527 [250 P.2d 739]). However, under this decision this jurisdiction of the Juvenile Court is a temporary one and is only controlling insofar as to cover the time during which the Juvenile Court has assumed and continued jurisdiction. The orders of the Juvenile Court concerning the physical custody and control of its ward supercede for so long as is necessary any existing orders of other Courts made in custodial matters which conflict therewith. In view of this fact the only obligation on the father during the time the Juvenile Court had jurisdiction of this matter was to make whatever payments were required by the Juvenile Court.''

The court then discussed at length the pertinent factual aspects of the present proceeding and concluded as follows: ''Weighing all of the equities, the Court is of the opinion that the execution should be enforced to the extent of any amounts which have accrued from October 7, 1957 [when the juvenile court proceedings were dismissed] to and including the issuance of the execution on December 8, 1960, to wit; a total of thirty-eight (38) months at $65.00 a month, or a total sum of $2,470.00. Because of the actions of plaintiff no interest is to be allowed on this amount.'' This reference to interest undoubtedly is intended

to explain why the amount to which the writ was reduced did not include interest on the $2,470 from the time of the entry of the judgment of December 8, 1960.

*Effect of Juvenile Court Proceedings.* The reduction in the amount of the writ by $1,430 was clearly correct. This amount is the portion of the writ which covers the period of January 1, 1956, up to October 7, 1957, when the juvenile court proceedings were dismissed.

During this period the juvenile court had exclusive jurisdiction over matters affecting the custody and support of the child. The defendant had complied with all support orders made by the juvenile court and he should not be subject to the orders of two separate courts during the same period.

The juvenile court is a department of the superior court. When it properly asserts its jurisdiction, the other departments of the superior court no longer maintain coexisting jurisdiction. During the period when the child is a ward of the juvenile court, that court has exclusive jurisdiction to determine matters such as custody and support. (*In re Syson* (1960) 184 Cal.App.2d 111 [7 Cal.Rptr. 298]; see generally, 1 Witkin, California Procedure 209, Courts, § 82; also *People* v. *Sanchez* (1942) 21 Cal.2d 466 [132 P.2d 819]; *Marr* v. *Superior Court* (1952) 114 Cal.App.2d 527 [250 P.2d 739].)

The *main issue* involved herein is whether the 1949 support order was permanently extinguished by the intercession of the juvenile court proceedings or whether it was only suspended by the orders of the juvenile court until such time as that court voluntarily dismissed its wardship and thereby terminated its jurisdiction. In other words, upon such termination of jurisdiction, did the 1949 support order again become effective? We think that it did.

In *Syson, supra,* the court stated (p. 117): "Once having attained wardship, the juvenile court continues to retain exclusive jurisdiction within the defined limitation of its powers. But this jurisdiction is always on a *temporary* basis. Any day that the juvenile court becomes convinced on evidence properly before it that the protection of the children no longer requires wardship, it will be the *duty* of the juvenile court to dismiss all wardship proceedings. . . . The moment the juvenile court does release wardship, the children pass completely from the mandatory jurisdiction of the juvenile court, and the jurisdiction of other courts, in-

cluding the superior court in the divorce action, is available.'' (Italics ours.)

The continuous aspect of a child support order is an important factor in determining the instant issue. The child here being illegitimate, the basic statute is section 196a of the Civil Code. This section provides that in an action such as this, ''the court shall have power to order and enforce performance thereof, the same as under sections 137, 137.5, 138, 139 and 140 of the Civil Code, in a suit for divorce by a wife.''

Section 139 of the Civil Code illustrates the *continuous nature* of a support order: ''That portion of the decree or judgment making any such allowance or allowances, and the order or orders of the court to enforce the same . . . may be modified or revoked *at any time* at the discretion of the court except as to any amount that may have accrued prior to the order of modification or revocation.'' (Italics ours.)

 It is clear that the court retains jurisdiction to modify, amend, or even revoke support orders. (*Anderson* v. *Anderson* (1954) 129 Cal.App.2d 403 [276 P.2d 862]; *Evans* v. *Evans* (1960) 185 Cal.App.2d 566 [8 Cal.Rptr. 412].) This principle is, of course, applicable to paternity cases. (*Kyne* v. *Kyne*, 60 Cal.App.2d 326 [140 P.2d 886]; Cont. Ed. Bar, The California Family Lawyer, vol. I, § 18.47, p. 759.)

 There can be no question that, except for the period during which the juvenile court's jurisdiction superseded it, the court in this action has had and will have continuing jurisdiction over the support payments for the child until she becomes of age. (*Berry* v. *Chaplin* (1946) 74 Cal.App.2d 669 [169 P.2d 453].)

It is logical to conclude that the support order survived the juvenile court proceedings and was not extinguished by them. It would not be logical that, once the juvenile court assumes jurisdiction, the prior support order of the superior court should be terminated *permanently*. This is particularly true when the temporary nature of the juvenile court's wardship is considered. Many times it is of exceedingly short duration. It does not seem feasible that the juvenile court, perhaps acting for a very limited time and for a limited reason (e.g., mother's mental illness), should be able to terminate all previous related court orders merely because it has assumed, then dismissed, its jurisdiction.

In *Marr* v. *Superior Court* (1952) 114 Cal.App.2d 527, 531 [250 P.2d 739], the court stated: ''[W]hen a juvenile court

has adjudged an infant to be its ward then the orders of that court concerning the physical custody, control and care of its ward supersede *for so long as necessary* any existing orders of other courts made in custodial matters which conflict therewith. . . ." (Italics added.)

Under the juvenile court jurisdiction, the child was placed in a foster home and the county paid for her maintenance. Defendant then reimbursed the county. When the plaintiff took the child out of the foster home, the county no longer had this expense and defendant was allowed to cease his payments.

Defendant, however, remains obligated to support his child. The court in this action has acquired and retained jurisdiction over the defendant and the child. If defendant was dissatisfied with the 1949 support order of $65 per month, he had the right to apply to the court, at any time after the termination of the juvenile court proceedings, for a modification of such order. He did not elect to do so, apparently taking the position that, the juvenile court having allowed him to discontinue his payments to the county, he was thereby relieved of all obligation to support his child. We do not believe the law should be so construed.

*Discretion to Quash Writ in Whole or in Part.* The trial court has the discretion to permit execution to issue, either entirely, in part, or not at all. (*Messenger* v. *Messenger* (1956) 46 Cal.2d 619, 630 [297 P.2d 988]; *Tobin* v. *Tobin* (1960) 181 Cal.App.2d 789, 794 [5 Cal.Rptr. 712]; *Baum* v. *Baum* (1959) 172 Cal.App.2d 658 [342 P.2d 940]; 8 Hastings L.J. 214.)

 However, once the writ issues, it is up to the judgment debtor to present his reasons why the writ should be quashed. This again is a matter addressed to the equitable discretion of the court. (*Wilkins* v. *Wilkins* (1950) 95 Cal.App. 2d 605, 610-611 [213 P.2d 748]; *Noice* v. *Noice* (1961) 195 Cal.App.2d 204, 213 [15 Cal.Rptr. 703].)

 In *Wilkins, supra*, it is stated, at pages 610-611: "[T]he affidavit, order and execution issued thereon are subject to review and the execution is subject to recall, upon motion, timely made, at which time the trial court may exercise its judicial discretion in determining whether the facts set forth in the affidavit are true, and whether there has been a misrepresentation of the facts or wilful suppression of facts which should have been related to the court in the first instance, or whether the husband was or was not under a legal duty to support the children or wife during the period in

question. *It therefore would appear that the trial court has, under the circumstances here related, the right to recall the execution and allow the enforcement of the judgment, only to the extent of the husband's legal and equitable liability to pay.''* (Italics ours.)

*Abuse of Discretion.* ▆▆▆ The record shows very clearly that the trial court went into this matter with great thoroughness and patience. The 10-page memorandum, which was read into the record, amply demonstrates its complete grasp of all of the pertinent facts and the applicable law.

In it the court fully expressed the equities on each side, including the facts that the plaintiff had taken the child out of the state and kept her location secret in direct defiance of the court; the fact that the defendant made no effort to have the support order modified or terminated when the plaintiff left the state, but waited until, some five years later, he was forced into action in the form of a motion to quash; the fact that despite the turbulence of the relationship between defendant and plaintiff, the child had been raised by plaintiff in the interim into an intelligent, poised, well-balanced young lady (this latter fact the trial court ascertained for himself by a lengthy personal interview with the child in chambers); the fact that the defendant father apparently has never shown any interest in the child himself and is clearly not interested in any future contact with her; and the fact that the mother has been the child's sole support since December 24, 1955.

The court stated that it was well aware that in the case of an illegitimate child the liability for support is a mutual obligation of both the mother and the father and that the claim upon which the execution was issued is one for reimbursement to the mother for moneys which she had already expended in caring for the child; it also pointed out that the mother had gone into debt in order to maintain the child properly and that, because of her disobedience of the court, defendant had received a financial benefit by being relieved of support payments from December 24, 1955, to October 7, 1957.

It is abundantly clear that the trial court conscientiously weighed all factors involved in the case. A more equitable exercise of the court's discretion does not seem possible.

It is unnecessary to discuss the attacks on ·the jurisidiction of the juvenile court (questioning by plaintiff of the original acquisition of jurisdiction; questioning by defendant of the dismissal of jurisdiction). These attacks, raised as argu-

ments in this appeal, are undoubtedly collateral attacks and therefore subject to the usual strict rules. (3 Witkin, California Procedure, 2044 et seq., Attack on Judgment in Trial Court, § 2.) Neither attack has any merit, even if properly presented.

Order affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.