[Civ. No. 8738. Fourth Dist., Div. One. June 28, 1968.]

LILLIAN E. SIMONET, Plaintiff and Appellant, v. EDWARD C. SIMONET, Defendant and Respondent.

Wilmer Breeden for Plaintiff and Appellant.

Carstens, Todd, Wright & Toothacre, Edward M. Wright, Miller, Evatt & Henry and Gaylord L. Henry for Defendant and Respondent.

WHELAN, J.—Plaintiff appeals from an order made November 2, 1966 vacating an order for issuance of a writ of execution dated July 29, 1966 quashing and recalling the writ, vacating levies of execution and staying sales under execution.

Lillian E. Simonet and Edward C. Simonet were married in 1933 and separated in 1942. Lillian obtained an interlocutory decree of divorce on May 13, 1948 after Edward had attempted unsuccessfully during the pendency of the California action to obtain a divorce in Missouri. Edward was ordered to pay $80 per month alimony until further order of the court. He ceased making payments in 1949, the last payments having been made by him through the County Welfare Department to which Lillian had gone for assistance. Lillian obtained a final decree of divorce in 1955. She has never remarried. Edward went through a marriage ceremony in 1944 and in 1947 became the father of a child by his present wife, whom he married legally in 1956.

On July 29, 1966, Lillian obtained a writ of execution against Edward in the sum of $12,624 ($9,600 for 10 years back alimony and $3,024 in interest) and an order fixing the amount of such delinquency with interest thereon during such 10-year period, and directing issuance of the writ. On July 28 and 29, 1966, respectively, she filed for record certified copies of the divorce decree and the order for issuance of execution. On August 3, 1966, the sheriff levied execution on Edward's house in Spring Valley, an unincorporated area within the County of San Diego. Edward filed a declaration of homestead on this property on August 12, 1966. On October 24, 1966, he filed a notice of motion for orders vacating the order for issuance of a writ of execution, quashing and recalling the

writ, vacating levies of execution and staying sales under execution.

Edward had not been in contact with Lillian since 1948. At the time of the interlocutory decree and until about September 1949, Edward was on active duty with the U. S. Navy. He had resided at the same address in Spring Valley continuously since November 1949 and his name had been on the property tax rolls since 1950. The parties' adoptive son had known of Edward's whereabouts since before 1956. Edward had worked continuously in the San Diego area since 1949.

Edward owed $9,000 for medical and hospital expenses, of which Blue Cross would be paying 60 to 80 percent. His house was encumbered for about $5,600. He grossed $2,743.20 a year from his Navy retirement and made $3.47 an hour as a civilian worker at North Island. (Based on a 40-hour week his gross income from that employment would have been $7,051.04 a year.)

Lillian maintained that she did not know Edward was in the San Diego area until 1965 and did not know his address until July 1966. A friend filed a declaration that she had assisted Lillian in her unsuccessful efforts to locate Edward by looking for his name in all the local telephone directories since 1952.

Edward's declaration included the following:

"That in reliance upon his understanding and belief that his obligation to pay alimony to plaintiff terminated in 1949, and in reliance upon the act and conduct of the plaintiff in making no demand for such payments and taking no action to enforce the same, the defendant has made no alimony payments whatsoever to the plaintiff since 1949, in the sincere belief that he was not obligated to make such payments and that the plaintiff had and made no claim upon him for any alimony or support after that time.

". . . .

"That by her acts and conduct the plaintiff has waived her rights, if any, to be paid alimony for any period since 1949 and to enforce said order for alimony for any period subsequent to 1949.

"That the plaintiff is guilty of laches in delaying until now to assert any claim or demand for the alimony she now alleges to be due; that such delay has worked to the disadvantage and prejudice of the defendant; that if such claim or demand had been made earlier the defendant would have sought termination or modification of said order for alimony; but that

defendant relied upon plaintiff's conduct in making no such claim or demand and therefore sought no termination or modification of said order and continued to believe that his obligation for alimony had terminated in 1949.''

Lillian's declaration, uncontradicted in this respect, stated:

''That the defendant appeared, according to the judgment and decree made on May 13, 1948 in person without counsel, upon the request of defendant that the matter continue without the aid of his counsel, which had been duly verified and approved by defendant's counsel of record . . .''

On November 2, 1966, the superior court issued the order appealed from. The order made no recitation of the reasons for making it other than the following:

'' [T]he Court having duly considered the declarations filed by and on behalf of the respective parties and the evidence, both oral and documentary, offered and received on behalf of the respective parties and the arguments of counsel thereon; and good cause appearing . . .''

The record does not disclose whether Edward has yet applied for an order terminating the alimony payments.

### The Issues on Appeal

The issues on appeal necessarily must be these:

 First. Except as the Right May Be Subject to the Provisions of Section 139, Civil Code, Did the Plaintiff Have an Absolute Right to the Issuance of a Writ of Execution for All Sums That Became Due Within the 10-Year Period Immediately Preceding Her Application?

Yes. The right is declared in *DiMarco* v. *DiMarco,* 60 Cal.2d 387, 393 [33 Cal.Rptr. 610, 385 P.2d 2]; *Di Corpo* v. *Di Corpo,* 33 Cal.2d 195, 201 [200 P.2d 529]; *Lohman* v. *Lohman,* 29 Cal.2d 144, 150 [173 P.2d 657]; *Wolfe* v. *Wolfe,* 30 Cal.2d 1, 4 [180 P.2d 345].

 The right to obtain such a writ covering payments for such 10-year period where the decree relied on was entered more than 10 years before the application for the writ does not depend upon any showing of diligence within the 10-year period immediately following the date of the decree. (*Bryant* v. *Bryant,* 161 Cal.App.2d 579, 583 [326 P.2d 898]; *Ford* v. *Ford,* 144 Cal.App.2d 677 [301 P.2d 450].)

The application may be made *ex parte.* (*Slevats* v. *Feustal,* 213 Cal.App.2d 113, 116 [28 Cal.Rptr. 517]; *Di Corpo* v. *Di Corpo, supra,* 33 Cal.2d 195.)

 Second. In the Absence of Some Concealment or Misrepresentation as to a Fact Material to the Issu-

ANCE OF AN EXECUTION OR TO THE AMOUNT FOR WHICH IT IS ISSUED, MAY A COURT QUELL AND QUASH A WRIT ISSUED FOR THE AMOUNT OF DELINQUENT ALIMONY ACCRUED WITHIN 10 YEARS IMMEDIATELY PRECEDING THE ISSUANCE OF THE WRIT?

No; except to the extent the court has such right under section 139, Civil Code, discussed hereafter.

■ Except as it may be permitted under section 139, the recall of a writ is limited to cases of misrepresentation or failure to disclose whether the failure be knowing and deliberate or unintended.

Thus in *Wilkins* v. *Wilkins*, 95 Cal.App.2d 605 [213 P.2d 748], the judgment creditor claimed delinquent support payments for two children for periods subsequent to the marriages of said children by which they became of age.

In *Rupp* v. *Rupp* (1954) 129 Cal.App.2d 23, 24 [276 P.2d 144], the question was whether the judgment creditor could obtain a writ of execution for a total that included amounts accruing more than five years before in the absence of a showing of due diligence to collect the amounts more than five years delinquent. The court answered affirmatively the question:

*"Did the record show that the trial court's ruling was correct because plaintiff had failed to use the due diligence which would entitle her to an execution for the full amount of defendant's delinquency to the date of plaintiff's motion?"*

In *Colby* v. *Colby*, 127 Cal.App.2d 602 [274 P.2d 417], the wife had obtained a writ for amounts allegedly due under a decree after the husband had by agreement with her satisfied in full his obligation under the decree.

In *Bryant* v. *Bryant, supra,* 161 Cal.App.2d 579, the amount due was falsely represented by the creditor.

In cases where the writ is obtained for an amount greater than was owing, the court is not required to quash the writ in its entirety, but may do so only as to the excess over the amount owing. (*Wilkins* v. *Wilkins, supra,* 95 Cal.App.2d 605; *Slevats* v. *Feustal, supra,* 213 Cal.App.2d 113.)

■ THIRD. WAS PLAINTIFF'S RIGHT TO OBTAIN ENFORCEMENT BY EXECUTION OF AMOUNTS ACCRUING IN THE IMMEDIATELY PRECEDING 10-YEAR PERIOD BARRED BY LACHES?

No. In *DiMarco* v. *DiMarco, supra,* 60 Cal.2d 387, 394, the court ruled: "There is no merit in the contention that the doctrine of laches was applicable in the present case. Since plaintiff's rights are based upon a judgment for the payment

of money, she can, by the terms of section 681 of the Code of Civil Procedure, enforce her rights at any time within 10 years, and she is entitled to do so whether or not the judgment is modifiable.''

FOURTH. IS THERE ANY BASIS FOR AN IMPLIED FINDING THAT PLAINTIFF WAIVED HER RIGHT TO ANY PAYMENTS SUBSEQUENT TO THE FIRST ANNIVERSARY DATE OF THE INTERLOCUTORY DECREE?

No. ▮▮▮ The matters set forth in the husband's declaration and testified to by him are not sufficient to support a finding of waiver by the wife of the rights accrued or to accrue under the decree of divorce. If the equitable defense of laches does not arise, which is a defense that does not call for any intentional choice by the party against whom it is asserted, so much the less is there a waiver, which always rests upon intent and is the intentional relinquishment of a known right after knowledge of the facts. (*Roesch* v. *De Mota*, 24 Cal.2d 563, 572 [150 P.2d 422].)

This is not to say that facts justifying a finding of waiver of a right might not also support a defense of laches against an assertion of the right.

The factual basis for a finding of waiver in such a case as *Graham* v. *Graham*, 174 Cal.App.2d 678 [345 P.2d 316], is not present here. In that case, there were oral communications between the parties; in *Patton* v. *Patton*, 32 Cal.2d 520 [196 P.2d 909], the right to future alimony was waived in a written contract. No claim is made by the husband in the present cause of action that anything was said or done by the wife to induce his claimed belief that the support should terminate at the end of 12 months; or that the wife had given up her right to support.

It is not without significance that of the many cases in which the waiver of a right has been upheld, dealing with a right to declare a forfeiture of a contract or a lease for nonpayment of some installment, the waiver is not held to be of the right to payment but of the ancillary right. (See *Woodard* v. *Glenwood Lbr. Co.*, 171 Cal. 513 [153 P. 951].) The same is true with regard to a claimed waiver of a right to a vendor's lien. (*Selna* v. *Selna*, 125 Cal. 357 [58 P. 16, 73 Am.St.Rep. 47].)

Even a claim of waiver of money owing based upon a written agreement, whose terms were possibly ambiguous, will not be upheld, since the evidence of intent from such contract

must be clear and convincing. (*City of Ukiah* v. *Fones*, 64 Cal.2d 104 [48 Cal.Rptr. 865, 410 P.2d 369].)

 FIFTH. DID THE COURT HAVE DISCRETION UNDER SECTION 139, CIVIL CODE, TO DENY ALL RIGHT OF RECOVERY TO THE PLAINTIFF?

No. In 1966, section 139 declared in part: "... said decree or judgment may be enforced by the court by execution contempt, or by such order or orders as in its discretion it may from time to time deem necessary." The quoted language is followed immediately by the following:

"That portion of the decree or judgment making any such allowance or allowances, and the order or orders of the court to enforce the same may be modified or revoked at any time at the discretion of the court except as to any amount that may have accrued prior to the order of modification or revocation."

The discretion thus conferred is one in support of enforcement of the court's decree, and is not one to prevent its enforcement utterly.

Thus in *Messenger* v. *Messenger*, 46 Cal.2d 619, 630 [297 P.2d 988], the discretion was properly exercised as stated by the court when the trial court:

"... found on sufficient evidence that to permit the issuance and enforcement of a writ of execution would discredit defendant professionally and impair his ability to make the monthly payments and discharge the arrearages. Accordingly, it did not abuse its discretion in conditioning the issuance of execution on defendant's noncompliance with its order to discharge the arrearages in installments."

In *Moniz* v. *Moniz*, 241 Cal.App.2d 74, 76 [50 Cal.Rptr. 267], where the question was as to the creditor's right to recover delinquencies covering a full span of 10 years, the court on appeal held as follows:

"... that appellant is entitled, as a matter of right, to execution for the whole unpaid amount; (2) that if in the judgment of the trial court an orderly suspension of the writ on condition that certain payments be made until the whole debt is discharged, be deemed to be for the protection of both creditor and debtor, in the light of circumstances as they exist at the new hearing, such suspension may be made.

 The court's discretion under proper circumstances may extend to the allowance or disallowance of interest on unpaid support, the fixing of a date from which interest should begin and the amount on which it should be paid.

(*Anderson* v. *Anderson*, 129 Cal.App.2d 403, 411 [276 P.2d 862].)

Among the orders that the court has discretion to make or refuse to make under section 139, Civil Code, is one for the appointment of a receiver. (*Tobin* v. *Tobin*, 181 Cal.App.2d 789 [5 Cal.Rptr. 712]; *Baum* v. *Baum*, 172 Cal.App.2d 658 [342 P.2d 940].)

■ SIXTH. DID THE RECORDATION BY PLAINTIFF OF A CERTIFIED COPY OF THE INTERLOCUTORY DECREE AND OF THE ORDER DETERMINING THE AMOUNT DUE CREATE A PRESENT LIEN ON THE PROPERTY ON WHICH DEFENDANT LATER DECLARED A HOMESTEAD?

The answer to that question is by no means clear.

Section 674.5, Code of Civil Procedure, declares: "A certified copy of any judgment or order of the superior court of this State for alimony or child support, when recorded with the recorder of any county, shall from such recording become a lien upon all real property of the judgment debtor, not exempt from execution, in such county, owned by him at the time, or which he may afterwards and before the lien expires, acquire, for the respective amounts and installments as they mature (but shall not become a lien for any sum or sums prior to the date they severally become due and payable) which lien shall have, to the extent herein provided and for the period of 10 years from such recording, the same force, effect and priority as the lien created by recordation of an abstract of a money judgment pursuant to Section 674."

Section 1241, Civil Code, provides in part: "The homestead is subject to execution or forced sale in satisfaction of judgments obtained:

"1. Before the declaration of homestead is recorded, and which, at the time of such recordation, constitute liens upon the premises."

The record on appeal contains copies of the interlocutory decree dated May 13, 1948, showing recordation on July 28, 1966. A copy of the order fixing the amount due was recorded on July 29, 1966.

The defendant, in support of his motion to quash the levy of the writ of execution, disingenuously declared under oath: "That no abstract of judgment in the above entitled action has ever been issued or recorded in the County of San Diego. . . ."

The interlocutory decree provided:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that the

Defendant pay to Plaintiff the sum of $80.00 per month commencing the date of this Order and until further Order of the Court, payable in advance, as and for her support and maintenance.''

The obscurity of the correct answer to the question whether the property was subject to a lien on August 12, 1966, is caused by the following considerations:

Payments unaccrued on the date of recordation of the copy of the judgment do not constitute a lien until they have become due; in the present case the first payment to become due after the recordation was that of August 13, for which, therefore, there was not a lien on August 12.

It follows that unless there was a lien created for the unpaid amounts that had accrued prior to the recordation of the copy of the decree, the property was free of a judgment lien on August 12 when the homestead declaration was recorded.

On balance we consider that there was a lien for the unpaid installments accrued to the date of recordation of the decree.

The arguments against such a conclusion are these: the language ''for the respective amounts and installments as they mature'' might not unreasonably be interpreted to refer to installments as they thereafter mature.

Since the creditor may obtain execution for all delinquent payments for a 10-year period, to allow a lien for all payments for such 10-year period by virtue of recording a copy of the decree at the end of such period, would be to impose a lien for a further period of 10 years for installments some of which at the expiration of the lien period would have been delinquent for nearly 20 years, whereas, under section 674, Code of Civil Procedure, other judgment liens are good for only 10 years from the date of entry of the judgment.

On the other hand, to deny a lien for all payments that were delinquent at the time of recordation of the decree would seem to frustrate the purpose of the enactment of section 674.5, Code of Civil Procedure, in 1959. That purpose obviously was to meet the objection that the allowance of a lien for installment payments to be made for an indefinite period deprives the debtor of the right to clear his property of a lien because the amount to be paid for that purpose cannot be determined. (*Yager* v. *Yager,* 7 Cal.2d 213, 216 [60 P.2d 422, 106 A.L.R. 664]; *Bird* v. *Murphy,* 82 Cal.App. 691 [256 P. 258].)

Prior to the adoption of section 674.5, Code of Civil Proce-

dure, the court, in *Moniz* v. *Moniz,* 142 Cal.App.2d 641 [299 P.2d 329], was satisfied to leave as a lien on the debtor's home an abstract of judgment for delinquent installment payments ordered to be made by a divorce decree and which had accrued to the date of recordation of the abstract.

The objection that the amount necessary to obtain a release of the lien cannot be ascertained does not apply when the lien is only for amounts already accrued; in dealing with the problem, the discretion declared in section 139, Civil Code, might be exercised to declare that the lien should not apply as to any amount accrued more than 10 years past.

In the present situation, defendant has income from federal retirement pay and other income from earnings as a federal employee, all of which income is immune from the process of the state courts.

Such a situation is one calling for the exercise of the court's discretion to make an order permitting the reduction of the accrued delinquency in payments reasonably within the ability of defendant to make, while providing for the retention of the judgment lien on the real property as security for the payments to be made.

The order appealed from is reversed with directions to reconsider defendant's motion in the light of this opinion.

Brown (Gerald), P. J., and Nix, J. pro tem.,\* concurred.

Respondent's petition for a hearing by the Supreme Court was denied August 21, 1968.

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.