[No. A055801. First Dist., Div. Two. June 3, 1993.]

In re ROSALINDA C., a Person Coming Under the Juvenile Court Law.
SONOMA COUNTY SOCIAL SERVICES DEPARTMENT, Plaintiff and
Respondent, v.
ROSA P., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I.

**COUNSEL**

Judith E. Ganz, under appointment by the Court of Appeal, for Defendant and Appellant.

James P. Botz, County Counsel, and Tara Harvey, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**KLINE, P. J.**—The chief question presented by this appeal is whether a trial court may dismiss a dependency proceeding after ordering a long-term placement as the permanent plan. In an unpublished portion of the opinion, we address the additional contention that the trial court failed to comply with the Indian Child Welfare Act despite indications in social workers' reports and in testimony that the act might apply.

## Statement of the Case and Facts

Rosalinda C. was born on May 2, 1988, a 31- to 32-week premature infant weighing 3 pounds. Appellant, her mother, reported that the father, Juan C.,[1] lived in Mexico, was also the father of her older daughter, Alana, and had not been informed of Rosalinda's birth.

On May 9, 1988, a petition was filed in the Sonoma County Juvenile Court alleging that Rosalinda came within the provisions of Welfare and Institutions Code section 300, subdivision (a), due to the presence of opiates in her bodily fluids, her mother's drug use and failure to obtain regular prenatal care, and her father's absence. Appellant admitted the allegations on May 31. Rosalinda was placed with appellant, who lived with her parents and sister, Julie Hernandez. A supplemental petition was subsequently sustained on January 3, 1989, and Rosalinda was detained in appellant's mother's home; after appellant's mother died suddenly in February, Rosalinda was placed with Hernandez, who was also caring for Alana.

Appellant made some progress toward reunification, but it was inconsistent. She gave birth to a third child and eventually left all three children with Hernandez. At a meeting with the social worker in early December, Hernandez made clear that she did not wish to continue caring for the children.

In November 1989, Rosalinda's paternal grandmother, Carlota Barba, arrived from Mexico reporting that appellant had said she wanted Juan C. to have the children; appellant denied this. Barba said she wanted to take the children to Mexico, was told the department could not make a placement outside the country, and was allowed visitation while she was in the area.[2]

On January 2, 1990, the court continued reunification services for an additional six months. Before the 18-month hearing, the social worker reported that Rosalinda was suffering developmental delays of as much as 6 months; appellant had been incarcerated on assault charges arising from a domestic dispute and was scheduled to be released September 17, 1990; and the children were being cared for by another maternal aunt. Although Juan C. had expressed interest in January in having the children live with his family in Mexico, the department was unable to contact him after learning of appellant's incarceration. Hernandez, who had been inclined to try to adopt Rosalinda, no longer felt she could do so after learning of Rosalinda's

---

[1] Rosalinda's father is referred to early in the record as George C. and later as Juan C.

[2] In March 1989, Juan C. had been incarcerated on drug charges in California and contacted and met with the social worker before being released and deported to Mexico. He expressed interest in custody of the children if they could not be with appellant, but failed to remain in contact with the worker.

developmental delays. Appellant told the social worker she would not contest a recommendation of adoption if Barba (the paternal grandmother) was going to adopt Rosalinda but would contest any other placement. An adoption assessment stated that appellant and Hernandez indicated there were no maternal relatives available to consider adoption and appellant was hoping Barba would care for the three children.

On August 2, 1990, the court found there was a substantial likelihood Rosalinda would not be adopted, ordered long-term placement as the permanent plan and the minor detained with the paternal grandmother and continued the matter to October 2 for possible dismissal. It was reported that the family reunification worker had contacted the Mexican Consulate to request a report on Rosalinda's status by a Mexican governmental agency and the Mexican Consulate had requested a home study from the Mexican Social Service Agency (D.I.F.). The D.I.F. subsequently reported Rosalinda to be in good condition based on an unannounced home visit and follow-up call to the child's physician.

At a hearing on December 3, 1990, the court retained Rosalinda as a dependent, maintained long-term placement as the permanent plan and continued the matter to June 3, 1991. On May 1, 1991, the family reunification worker reported the placement appeared stable and appropriate. Barba had submitted an affidavit in which two neighbors testified to the good care she was providing for Rosalinda; the social worker did not know what legal standing this gave Barba with respect to guardianship, and attempts to find out through the Mexican Consulate had been unsuccessful.

Over the next few months, the matter came on for hearing and was continued several more times. In August, the social worker reported having spoken with Barba's attorney in Mexico, who did not believe legal guardianship could be easily facilitated without appellant being present in Mexico but expressed the opinion that Mexican courts would recognize the juvenile court's placement of the minor with her grandmother. He was preparing an affidavit stating the grandmother was in effect guardian and custodian to the minor that he felt would give legal recognition to the grandmother's claim of custody. In September, the social worker reported having spoken with another attorney in Mexico, who stated that Mexican law does not provide for legal guardianships but utilizes a process called "Patria Potestad" where parents are incapacitated and unable to care for minors. Barba had secured a declaration of Patria Potestad that the lawyer said would be recognized by Mexican authorities as giving her de facto guardianship; the lawyer was also securing a Patria Potestad through a process he estimated would take four to six months.

At a hearing on September 10, appellant testified that while visiting her daughter in Mexico in March 1991 she was concerned because she observed Juan C. using intravenous drugs and did not like the special school Rosalinda was attending.[3] Appellant testified that she originally thought it would be in Rosalinda's best interests to live with her grandmother in Mexico and sent her other two daughters so Rosalinda would not be alone.

At the conclusion of the testimony, the court found Rosalinda was in Mexico with appellant's consent and at her urging and Barba was adequately meeting the child's needs. The court stated that while appellant was free to go to Mexico to try to get custody of her children, Barba had papers she felt protected her short of legal proceedings appellant might institute. The action was dismissed.

Appellant filed a timely notice of appeal on November 8, 1991.

## DISCUSSION

### I.*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

### II.

The fundamental question in this case is whether the trial court had authority to dismiss the proceedings. Welfare and Institutions Code section 366.25, subdivision (d)(3)(C),[11] contemplates reviews every six months for children placed in foster care; subsequent hearings need not be held if the child has been freed for adoption and placed in a previously identified adoptive home awaiting finalization of the adoption or if the child "is the ward of a guardian." (§ 366.25, subd. (h).) Under section 366.3, if a juvenile court orders a permanent plan of adoption or legal guardianship pursuant to section 366.25 or 366.26, the court must retain jurisdiction over the minor until the minor is adopted or the legal guardianship is established, reviewing

---

[3]Appellant had visited the children at Barba's expense and, according to Barba, created several crises during her 10-day stay by drinking alcohol excessively and demanding to take Alana and Dorlisa (not Rosalinda) to the United States. Barba was not opposed to continued contact between appellant and the children but was unwilling to pay for airfare again. It had been reported in May that Rosalinda was functioning at normal levels except in the area of language development; Barba and the worker agreed the child should be removed from the special school she was attending; and Rosalinda's physician noted she was exhibiting "behavioral disorders" consistent with mental retardation.

*See footnote, *ante*, page 273.

[11]Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

the minor's status every six months. When adoption is granted, the court "shall terminate its jurisdiction over the minor"; following establishment of a legal guardianship, the court "may continue jurisdiction over the minor as a dependent minor of the juvenile court" or "may terminate its dependency jurisdiction and retain jurisdiction over the minor as a ward of the guardianship established pursuant to Section 366.25 or 366.26 and as authorized by Section 366.4." (§ 366.3, subd. (a).)[12] The governing statutes thus do not appear to authorize termination of all jurisdiction over a child even when a legal guardianship has been established, and certainly not when the child is in a long-term placement.

The trial court in this case ordered long-term placement with Barba as the permanent plan and did not establish a guardianship. (See § 366.25, subd. (e) [requirements for appointment of guardian].) The court's remarks at the dismissal hearing suggest it may have taken the view that Barba had obtained the equivalent of a legal guardianship under Mexican law. All the court found, however, was that "the information to this court is that the grandmother does have the type of custody papers as to Rosalinda that she feels protect her, short of a court process, which mother may institute if she wishes." There was no evidence before the court that a legal guardianship had in fact been established, or that whatever process was utilized under Mexican law was equivalent to a legal guardianship under California law. The court thus had no evidence Barba had legal authority to make decisions for Rosalinda or had made a commitment to care for the child permanently.

The parties agree that there is little authority on the question when a trial court may dismiss dependency proceedings, both relying on the standard discussed in *In re Sarah M.* (1991) 233 Cal.App.3d 1486 [285 Cal.Rptr. 374]. In that case, a child was removed from her mother's custody and placed with her previously noncustodial father, who later successfully moved to terminate the juvenile court's jurisdiction. Under section 361.2, when a juvenile court places a dependent child with a formerly noncustodial parent, it may either make that parent legal and physical custodian of the child and terminate its jurisdiction over the minor (subd. (a)(1)) or order the parent to assume custody subject to juvenile court supervision (subd. (a)(2)). Noting that section 361.2 does not expressly state the circumstances under

---

[12]Section 366.4 provides: "Any minor for whom a guardianship has been established resulting from the selection or implementation of a permanent plan pursuant to Section 366.25 or 366.26 is within the jurisdiction of the juvenile court. For those minors, Part 2 (commencing with Section 1500) of Division 4 of the Probate Code, relating to guardianship, shall not apply. If no specific provision of this code or the California Rules of Court is applicable, the provisions applicable to the administration of estates under Part 4 (commencing with Section 2100) of Division 4 of the Probate Code govern so far as they are applicable to like situations."

which the juvenile court should terminate or continue its jurisdiction, the *Sarah M.* court adopted a standard found in case law and in a different statute not directly applicable to the case, section 366.21, subdivision (e).[13] Section 366.21, subdivision (e), provides that at the six-month review hearing, if the minor had been placed under court supervision with a previously noncustodial parent pursuant to section 361.2, the court "shall determine whether supervision is still necessary" and may terminate supervision as provided for by section 361.2, subdivision (a)(1). This "need-for-supervision" standard (*In re Sarah M., supra,* 233 Cal.App.3d at p. 1496) is also found in cases which state the rule that juvenile court jurisdiction continues until the court "becomes convinced on the evidence that the protection of the minor no longer requires supervision." (*In re Francecisco* (1971) 16 Cal.App.3d 310, 314 [94 Cal.Rptr. 186]; see *Slevats* v. *Feustal* (1963) 213 Cal.App.2d 113, 117 [28 Cal.Rptr. 517]; *In re Syson* (1960) 184 Cal.App.2d 111, 117 [7 Cal.Rptr. 298].)

*Sarah M.* is of limited usefulness in the present case because it involved placement with a parent, where the governing statutes expressly contemplate termination of juvenile court jurisdiction. As stated above, in the present case the court ordered a long-term placement, a situation in which the statutes appear to contemplate continued supervision. A juvenile court has a continuing responsibility to account for the welfare of a dependent child under its jurisdiction, wherever placed, unless and until a permanent and stable home is established. In the absence of an adoption or legal guardianship, continued supervision is necessary because there is no person with legal custody of the child and no assurance the placement is permanent. On this record, dismissal of the dependency was premature.[14]

The order of dismissal is reversed, and the matter remanded for proceedings consistent with the views expressed in this opinion.

Smith, J., and Benson, J., concurred.

---

[13]Section 366.21, subdivision (e), applies to children made dependents *after* 1988. Sarah M., like Rosalinda, was declared a dependent child in 1988.

[14]Since the evidence was insufficient to show a guardianship or analogous arrangement for legal custody had been established under Mexican law, we do not address appellant's contention that the trial court erred in deferring to the Mexican process. Nor do we attempt to address the question whether proof that the "Patria Potestad" had in fact been obtained would justify dismissal of the dependency proceedings, as the present record provides no basis for evaluating the characteristics of the Mexican legal arrangement or process by which it would be instituted.