[Civ. No. 27650. First Dist., Div. Two. Nov. 23, 1970.]

In re DAVID S.,
a Person Coming Under the Juvenile Court Law.
HERSCH E. BAYES, as Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
DAVID S., Defendant and Appellant.

## COUNSEL

Paul Ligda, Public Defender, Robert E. Barnett, Deputy Public Defender, and Peter Bull for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Louise H. Renne, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TAYLOR, J.**—This is an appeal from an order dated November 14, 1969, finding appellant to be a ward of the juvenile court as a person "beyond the control" of his parents, pursuant to section 601 of the Welfare and Institutions Code.

The facts, admitted at the hearing, were that the minor, who was about 14 years old, on Friday, September 19, 1969, left home with his mother's consent to spend the weekend at Stinson Beach with his friends. However, he went to San Diego instead, where he was subsequently apprehended while attempting to cross the border into Mexico. He admitted that he had deliberately lied to his mother because he knew she would not give him

permission for the trip to San Diego. On the basis of this incident, the court found that the minor was a person "beyond the control" of his parents and, therefore, subject to the jurisdiction of the court pursuant to section 601. He was declared a ward of the court and remanded to the custody of the probation officer for placement in his own home on probation.

The question on appeal is whether the conduct admitted by the minor was sufficient to warrant a finding that he become a ward of the juvenile court. It is uncontroverted that on the basis of the incident described above, the court found that the minor was beyond the control of his parent and, therefore, subject to the jurisdiction of the court.[1]

Welfare and Institutions Code section 601 provides: "Any person under the age of 21 years who persistently or habitually refuses to obey the reasonable and proper orders or directions of his parents, guardian, custodian or school authorities, *or who is beyond the control* of such person, or any person who is a habitual truant from school within the meaning of any law of this State, or who from any cause is in danger of leading an idle, dissolute, lewd, or immoral life, is within the jurisdiction of the juvenile court which may adjudge such person to be a ward of the court." (Italics added.)

The phrase "beyond the control" has not been judicially construed[2] and, as noted elsewhere,[3] basically means defying parental authority.

---

[1] The record also indicates that in April 1969, a prior petition based on Welfare and Institutions Code section 602 was dismissed and not considered in the instant matter.

[2] The only California case, *Marr* v. *Superior Court,* 114 Cal.App.2d 527 [250 P.2d 739], referring to the phrase "parental control" in the predecessor of section 601, said at page 530: "Parental control means such control as parents ordinarily exercise and the phrase carries with it the implication of the purpose of parental control over such an infant, that is, its proper care and support, the usual incidents of the exercise of control over it."

[3] "The Challenge of Crime In a Free Society," a report by the U. S. President's Commission on Law Enforcement and Administration of Justice (1967) page 84. It has also been suggested that the term is meaningless unless parental neglect is shown (Rubin, *Legal Definition of Offenses by Children and Youths* (1960) Ill. L. F. 512, 515), and that some of the statutory language used in section 601 would be "unconstitutionally vague if it were used as the basis for criminal prosecution" (Paulsen, *Fairness to the Juvenile Offender,* 41 Minn. L. Rev. 547, 556). We are also aware that the broad jurisdiction of the juvenile court over noncriminal conduct has been currently questioned by some current evaluations. The 1967 Report of the President's Commission states at page 85: "Serious consideration, at least, should be given to complete elimination of the court's power over children for noncriminal conduct." See also July 1968, Bay Area Social Planning Report on the S. F. Juvenile Court, volume 2, pages 59-60. Fortunately, none of these issues are directly before us.

The minor, relying on out-of-state authorities,[4] argues that the adjectives "persistently or habitually" should be read into the second clause, so that more than a single act or a habitual pattern of conduct is required for the jurisdictional finding.

It is clear that a single instance of conduct is sufficient to make a minor subject to the jurisdiction of the juvenile court pursuant to Welfare and Institutions Code section 602, which refers to persons under the age of 21 who violate a law of this state.[5] (*In re Dennis M.*, 70 Cal.2d 444 [75 Cal. Rptr. 1, 450 P.2d 296].) However, section 601 proscribes an area of conduct that does not involve violation of any law of this state, but the complex and difficult area of defining the possibilities for official intervention in the lives of children who have committed an act that would not be a crime if committed by an adult. As our Supreme Court recently suggested that the most acceptable function of section 601 may be the placement of youths who are not covered by section 602 (*In re Gladys R.*, 1 Cal.3d 855, fn. 20, at p. 865 [83 Cal.Rptr. 671, 464 P.2d 127]), its provisions must be construed with particular care. Furthermore, if the standards of conduct proscribed by section 601 are not carefully delineated, the statute could become a means of systematic discrimination against young people who are thereby denied equal protection of the law (79 Yale L.J., 445).

The language of the statute supports the construction urged by the People. Significantly, the language of the statute is in the disjunctive. The phrase "persistently or habitually" precedes the phrase "refuses to obey the reasonable and proper orders or directions of his parents," and is set off by a comma from the next phrase, "or who is beyond the control." Thus, the Legislature envisioned that while the first sentence of the statute requires repeated refusals on the part of the minor to obey his parents, etc., a

---

[4]Section 11-1551(1)(b) of the Washington, D.C. Code refers specifically to a person "who is habitually beyond the control of his parent or guardian" and see *In re Sippy* (D.C. Mun. Ct. App. 1953) 97 A.2d 455. Section 712(b) of the New York Family Court Act defines a person in need of supervision as a minor who is ". . . habitually disobedient and beyond the lawful control of his parent or other lawful authority." The New York provision is close to the definition recommended for Family and Juvenile Courts Acts by the U.S. Children's Bureau of a child who "(2) habitually disobeys the reasonable and lawful demands of his parents . . . or is ungovernable and beyond their control . . ." (Legis. Guide for Drafting Family and Juvenile Courts Acts, Children's Bureau Publication No. 472 (1969) U.S. Dept. of Health, Education and Welfare, p. 5).

*Kahm* v. *People* (1928) 83 Colo. 300 [264 P. 718], held that a juvenile stealing only one automobile did not constitute either "incorrigibility" or "growing up in idleness or crime." Also in accord is *Jones* v. *Commonwealth* (1946) 185 Va. 335 [38 S.E.2d 444].

[5]A minor adjudged a ward of the court under section 601 may not be sent to the California Youth Authority as is possible under section 602. Otherwise, however, a 601 case is not treated too differently from a 602 case.

single act, if sufficiently serious, would indicate that the minor was "beyond control."

■■■ Here, the 14-year-old minor deliberately lied to his mother to obtain her permission to spend a weekend with friends in Stinson Beach, which as we may judicially notice is about 40 miles from the minor's home in Suisun (Evid. Code, § 450; *Department of Social Welfare* v. *Gandy,* 56 Cal.App.2d 209 [132 P.2d 241]). He was picked up in San Diego, which we may likewise judicially notice, is about 600 miles away from home as he was almost across the border into a foreign country. While the record does not establish precisely when he was picked up at the border crossing, he did not "get back on the weekend" as he was supposed to after obtaining his mother's permission to spend the weekend with friends. The juvenile court properly found that he was a runaway, beyond the control of his parents, and subject to its jurisdiction.

Affirmed.

Shoemaker, P. J., and Agee, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 21, 1971. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.