McKEOWN, Circuit Judge,
concurring in part and dissenting in part:
I concur in the majority’s decision to remand this case for a new trial. I also concur in the remand of the state law claims. I respectfully dissent from Part B, which holds that Officers McIntosh and Prock are entitled to qualified immunity on C.B.’s Fourth Amendment claims. The facts demonstrate that C.B.’s prolonged detention was unconstitutional. In light of existing precedent, the district court did not err in denying the motion for judgment as a matter of law premised on qualified immunity.
Three police officers arrived at the playground of Sonora Elementary School in response to a dispatch reporting an “out of control juvenile.” Upon arrival, the officers found C.B., an 80-pound 11-year-old child, seated calmly and silently on a bench, staring at the ground. A school official whispered “Runner. No medicine.” and made corresponding hand gestures to the officers, but did not explain what medicine C.B. had failed to take or what it meant to be a “runner.” Indeed, some of his medicines were at the school, though no one bothered to check. Based on this meager information, without making further inquiries, and after no more than five minutes of unsuccessfully attempting to engage C.B. in conversation, the officers ordered C.B. to stand up with his hands behind his back, handcuffed him, placed him in the back of a police vehicle, and transported him while handcuffed to his uncle’s business.
At trial the officers testified that they had no reason to believe C.B. had committed any crime or threatened anyone’s safety, nor was there any evidence that the child was a danger to himself. It is undisputed that C.B. did not act out of control, did not make any attempt to run away, and was compliant throughout. Under these circumstances, C.B.’s prolonged detention was unreasonable, the standard set out by the Fourth Amendment as well as the Supreme Court in New Jersey v. T.L.O., 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). Imposing this standard on law enforcement agents is nothing new. Though responding to a school’s request, police officers cannot escape the reasonableness standard when they intercede as law enforcement. The police are not surrogate school officials for managing internal school problems. The officers here may well have been genuinely motivated to assist the school in some way, but good intentions cannot trump established law.
The officers’ focus on the meaning of the “reasonable cause” standard under California Welfare and Institutions Code § 625(a) is misplaced. That section is inapplicable on its face to C.B.’s scenario. Section 625(a) allows a peace officer who has “reasonable cause” for believing a minor fits into one of the categories described in § 601 to take the minor into temporary custody without a warrant. Both *828 §§ 601(a) and (b) describe minors who “persistently] or habitually] refuse[] to obey ... reasonable ... orders”— § 601(a) addresses disobedience towards “parents, guardian[s], or custodian[s],” while § 601(b) concerns disobedience towards “school authorities,” where a school attendance review board or probation officer determines that available services are insufficient to correct the minor’s disobedience.[1] Because Sonora Elementary School is not C.B.’s parent, guardian, or custodian under § 601(a),[2] and the requisite determination had not been made under § 601(b), the California welfare statute does not come into play.
Even if § 625(a) were applicable through § 601(a), the “reasonable cause” standard mirrors the “reasonableness” standard in T.L.O., 469 U.S. at 341-43, 105 S.Ct. 733, and state precedents make clear that C.B. was not “beyond control.” The officers had no evidence that there had been any persistent or habitual disobedient conduct on the part of C.B. A single act of defiance is ordinarily not enough to establish that a minor is beyond control under § 601(a) unless that single act is sufficiently serious. See In re Bettye K., 234 Cal. App.3d 143, 149, 285 Cal.Rptr. 633 (1991) (“A single act in violation of parental authority is ordinarily insufficient, by itself, to establish a finding that a minor is beyond parental control within the meaning of Welf. & Inst.Code, § 601, subd. (a)....”).
C.B.’s conduct—sitting silently on a schoolyard bench, even taken in conjunction with a dispatch to investigate an “out of control juvenile”—is incomparable to those single acts of defiance that have been deemed sufficiently serious under § 601(a) and hardly compares even to those that have been found insufficiently serious. See, e.g., In re D.J.B., 18 Cal.App.3d 782, 786-87, 96 Cal.Rptr. 146 (1971) (holding that leaving a parent’s home without consent was not a sufficiently serious single act of defiance); In re David S., 12 Cal.App.3d 1124, 1128, 91 Cal.Rptr. 261 (1970) (holding that lying about spending the weekend at a beach 40 miles from home but actually intending to go to Mexico and being picked up 600 miles away at the Mexican border was a sufficiently serious single act of defiance). *829 Not surprisingly, the cases under § 601(a) deal with parents, guardians, and custodians, not school officials. Contraiy to the majority’s assertion, it is abundantly clear that the officers had no authority to proceed under California law because §§ 601 and 625 are inapplicable to C.B.’s situation.
Putting §§ 601 and 625 aside, the Fourth Amendment requires that seizures be objectively reasonable in light of the facts and circumstances. Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). This inquiry requires a balancing of “the nature and quality of the intrusion on the individual’s Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.” Tennessee v. Garner, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) (internal quotation marks and citation omitted). In T.L.O., the Supreme Court addressed how that balance should be struck in the context of a search conducted by a teacher or school official in the school setting. 469 U.S. at 328, 105 S.Ct. 733. Taking into consideration a school’s special need to maintain an orderly educational environment and a teacher’s lack of familiarity with the “niceties of probable cause,” the Court held that school administrators acting on their own authority should be held to a standard more lenient than probable cause that focuses instead on the question of “reasonableness” according to the “dictates ... of common sense.” Id. at 341-43, 105 S.Ct. 733. The Court set out a twofold inquiry for determining the reasonableness of a school search: (1) whether the search was justified at its inception, and (2) whether the search as ultimately conducted was reasonably related in scope to the circumstances justifying the search in the first place. Id. at 341-42, 105 S.Ct. 733.
At a minimum, Officers McIntosh and Prock must be held to T.L.O.’s reasonableness standard, an issue the majority acknowledges “is a matter involving questions of fact more appropriately reserved for a jury,” and thus should not be resolved by granting qualified immunity. Although T.L.O. was decided in the context of a school search, that standard has since been applied to school seizures. See, e.g., Doe v. State of Hawaii Dep’t of Educ., 334 F.3d 906, 909 (9th Cir.2003) (“In applying the Fourth Amendment in the school context, the reasonableness of the seizure must be considered in light of the educational objectives [the school official] was trying to achieve.”) (citing T.L.O., 469 U.S. at 342, 105 S.Ct. 733); Wallace v. Batavia Sch. Dist. 101, 68 F.3d 1010 (7th Cir.1995); Edwards v. Rees, 883 F.2d 882 (10th Cir.1989). T.L.O. itself also involved school authorities acting alone, and the Coxirt expressed “no opinion” as to the appropriate standard to be applied to police conduct in the school setting. Id. at 347 n. 7, 105 S.Ct. 733. But the rationale behind T.L.O.—particularly the need to accommodate teachers’ unfamiliarity with the probable cause standard—indicates that the participation of police officers can only raise the standard of suspicion required. In short, T.L.O. set a floor of reasonableness.
Some courts have held that T.L.O.’s reasonableness standard applies to school seizures by law enforcement officers, see, e.g., Gray ex rel. Alexander v. Bostic, 458 F.3d 1295 (11th Cir.2006),[3] while others have *830 applied probable cause to police conduct in the school setting, see, e.g., Picha v. Wielgos, 410 F.Supp. 1214, 1219-21 (N.D.Ill.1976). We need not bridge this divide. As counsel for Officers McIntosh and Prock acknowledged at oral argument, the appropriate standard for police officers in the school setting is no lower than T.L.O.’s reasonableness standard for school administrators.
Applying T.L.O.’s twofold reasonableness inquiry, C.B.’s seizure was justified at its inception. Officers McIntosh and Prock were dispatched to investigate an “out of control juvenile.” They reasonably relied on the school official’s representation that C.B. was a runner and had not taken his medication when they initially detained C.B. and attempted to engage him in conversation. But once they discovered that C.B. was simply sitting silently on a schoolyard bench, they could no longer rely solely on the school official’s unexplained allegation that C.B. was beyond control and her request to remove C.B. from school—any continued detention of C.B. was not “reasonably related in scope to the circumstances which justified the interference in the first place.” Id. at 341, 105 S.Ct. 733. Aside from the fear that C.B. might run away—a fear I find objectively unpersuasive in light of Officers McIntosh and Prock’s own testimony at trial that C.B. never attempted to run, nor would he have been able to while surrounded by four standing adults—the officers do not cite any concrete objectives or interests advanced by C.B.’s prolonged detention. Nor did the officers make any basic assessment of the situation once they arrived on the scene—by, for instance, asking the school official what C.B. had done to prompt the dispatch to begin with—which might have uncovered facts on which they could make a judgment.[4] Without more, a school official’s request for the officers to intercede and a disabled 11-year-old child’s refusal to talk to the officers is hardly a reasonable justification for an extended detention. The officers’ conduct was objectively unreasonable and was “excessively intrusive in light of the age ... of the student and the nature of the infraction.” Id. at 342, 105 S.Ct. 733. They had no authority to proceed under either California law or the Fourth Amendment.
Because C.B.’s seizure was unconstitutional, I turn to the second prong of the qualified immunity analysis, namely whether C.B.’s constitutional right was “clearly established” at the time of the officers’ misconduct. Pearson v. Callahan, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). In my view, it would have been “clear to a reasonable officer” in September 2008 that C.B.’s seizure was “unlawful in the situation [Officers McIntosh and Prock] confronted.” Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).
The majority is mistaken that T.L.O. has never been applied to seizures. The officers had fair warning based on cases in the Ninth and other circuits that T.L.O.’s reasonableness standard applied to their conduct, meaning that C.B.’s seizure was required to be justified at its inception, and the seizure ultimately effected was required to be related in scope to the circumstances justifying it. See, e.g., Doe, 334 F.3d at 909 (citing T.L.O. and holding that, in the school context, “the reasonableness *831 of the seizure must be considered in light of ... educational objections”); Gray, 458 F.3d at 1304-06 (“applying] the reasonableness standard articulated in [T.L.O.] ... to school seizures by law enforcement officers”); Wallace, 68 F.3d at 1012-14 (noting that “several circuit courts have relied upon [T.L.O.] to find that seizures of students by teachers also come within the ambit of the Fourth Amendment” and concluding that “in the context of a public school, a teacher or administrator who seizes a student does so in violation of the Fourth Amendment ... when the restriction of liberty is unreasonable under the circumstances then existing and apparent”); Edwards, 883 F.2d at 884 (citing T.L.O. for the proposition that “courts have always sought to accommodate both the interests protected by the Constitution and the interests in providing a safe environment conducive to education in the public schools” when applying the Fourth Amendment in the school context).
Even without reference to these cases, an official can have fair warning that his conduct is unconstitutional when that violation is obvious. See United States v. Lanier, 520 U.S. 259, 271, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (“[A] general constitutional rule already identified in the deci-sional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] been previously held unlawful.”) (internal quotation marks and citations omitted). The prolonged detention of a compliant disabled 11-year-old child sitting on a schoolyard bench based on the paltry information relied on by Officers McIntosh and Prock is an obvious violation of the Fourth Amendment’s general proscription against unreasonable seizures.

. I agree with the district court that § 625(c), which authorizes the warrantless seizure of a juvenile in need of medical treatment or hospitalization, was not a legitimate basis for seizure. Because that section is inapplicable, I also agree with the majority that § 625(a) should be the focus of our analysis.

. On its face, the term "custodian” does not apply to school officials. See In re Rita M.P., 12 Cal.App.3d 1057, 95 Cal.Rptr. 430 (1970) (dealing with a custodianship relationship, where the custodian was a probation officer who had custody of the minor child while the child awaited placement in a foster home). This point is buttressed by the grouping together of parents, guardians, and custodians in § 601(a), indicating that “custodian” should be narrowly construed to parallel the level of specificity of "parent” and "guardian.” Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 586, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008) (noting that under the rule of ejusdem generis, “when a statute sets out a series of specific items ending with a general term, that general term is confined to covering subjects comparable to the specifics it follows”). Moreover, "school authorities” are specifically and separately addressed in § 601(b), which contains requirements and conditions not present in § 601(a). If school authorities qualified as custodians under § 601(a), they would not need to make the determination required under § 601(b), rendering the latter provision superfluous. United States v. 144, 774 Pounds of Blue King Crab, 410 F.3d 1131, 1134 (9th Cir.2005) ("It is an accepted canon of statutory interpretation that we must interpret the statutory phrase as a whole, giving effect to each word and not interpreting the provision as to make other provisions meaningless or superfluous.”) (citations omitted).

. In Gray, the Eleventh Circuit affirmed the district court’s denial of summary judgment on the basis of qualified immunity. The Eleventh Circuit explained that T.L.O.’s reasonableness standard applied to a deputy sheriff who detained and handcuffed a nine-year-old student for under five minutes after she allegedly threatened to hit her teacher in gym class, that the deputy sheriff violated the student's Fourth Amendment rights, and that the deputy sheriff was not entitled to qualified *830 immunity because the violation was obvious. Id. at 1304-07.

. The majority’s lengthy recitation of C.B.’s history at the school and information known by school officials is, of course, irrelevant since the officers knew none of these circumstances.