BERZON, Circuit Judge,
with whom Judge THOMAS joins, concurring in part and dissenting in part:
I concur in Judge Paez’s opinion, with one exception: as to C.B.’s unlawful seizure claim, I concur in the result reached by Judge Paez but would reach that result via different reasoning.
As to the seizure issue, the reliance on New Jersey v. T.L.O., 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), in the three other opinions in this case is, in my view, entirely beside the point. The police officer defendants have consistently maintained that they seized C.B. because they had reasonable cause to believe he was a child covered by California Welfare and Institutions Code section 601(a). But section 601(a) does not cover C.B.’s circumstance, nor could a reasonable police officer have thought it did. As the defendants have never suggested that they could, or did, seize C.B. to enforce the school’s own rules and disciplinary needs, we should be reviewing their actual defense, not manufacturing one for them.
I.
We are reviewing a judgment entered after a jury trial. Over the course of that trial, the police officers repeatedly explained that they took C.B. into custody pursuant to the Welfare and Institutions Code. Officer Prock, for example, acknowledged that he “arrest[ed]” C.B. under section 601. So did Officer McIntosh. The *1041 officers’ expert witness testified as to whether the circumstances allowed them to take C.B. into temporary custody under section 601(a).
Furthermore, the testimony at trial established that at the time of C.B.’s seizure, the understanding of both the officers and the school was that he was being put in handcuffs and carried away for law enforcement or mental health reasons, not school discipline. C.B. thought he was going to jail; no one told him otherwise. Coach Sinclair testified that she “[a]bso-lutely” believed the officers were taking C.B. to the hospital pursuant to Welfare and Institutions Code section 5150, which enables a “peace officer” to take a person into custody for seventy-two hours when there is probable cause to believe the person “is a danger to others, or to himself,” “as a result of a mental health disorder.”[1] Officer Prock testified that the plan was to take C.B. to the probation department before releasing him to a family member. See Cal. Welf. & Inst.Code § 626(d). It was only after C.B. was seized that Officer Prock realized that he had a prior existing business relationship with C.B.’s uncle and so decided, with Chief McIntosh’s permission, to drive C.B. directly to the uncle’s home.
In closing argument, counsel for the officers pointed the jury to sections 625 and 601 of the Welfare and Institutions Code and described this statutory authority as their “primary defense” to C.B.’s constitutional claims. As to the unconstitutional seizure claim, counsel for the officers explained: “[Wje’re saying that the law authorizes us to take the plaintiff into custody without a warrant because he’s beyond the control of his guardian.” Counsel for the officers went on to argue that the evidence showed C.B. was “beyond the control of the school,” and that the officers were for that reason “allowed to take him into temporary custody without a warrant. ... under the Welfare [and] Institutions Code [sections] 625 and 601.”
The jury was instructed in accord with the proffered defense that “seizure ... without an arrest warrant is reasonable if the officers ... had probable cause to believe that the person was subject to temporary custody without a warrant,” and that “[w]hether the defendant officers had probable cause to conclude that [the] plaintiff was a juvenile who was subject to temporary custody under the Welfare [and] Institutions Code, as that law is described in these circumstances, should be determined by you under the totality of the circumstances.”[2] (Emphasis added.)
After the jury returned a verdict in favor of C.B., the officers moved for judgment as a matter of law on the ground that they were entitled to qualified immunity for C.B.’s unlawful seizure claim. Their argument was that “the officers were authorized to take [C.B.] into custody under [s]ection 625 and 601 of the California Welfare and Institutions Code.”
On appeal, the police officers continue to maintain that they took C.B. into “temporary custody under Welfare [and] Institutions Code sections 601 and 625.” They contend that they “arrested Plaintiff C.B.” pursuant to this statutory authority “based on reasonable cause to believe C.B. was beyond the control of the school.” And, although the three other opinions in this case cite T.L.O. as alternately barring or justifying C.B.’s seizure, the officers them *1042 selves in their appellate filings have never cited T.L.O. at all. In their response to the petition for rehearing en bane, the officers noted that the panel opinion “accurately identif[ied] Section 601(a) and 625(a) as the authority invoked and relied upon by the Officers! ] in taking C.B. into temporary custody.”
Simply put, the police officers are defending against C.B.’s allegations on the ground that they behaved as law enforcement officers, not school administrators or officials, when they arrested C.B. pursuant to their asserted statutory authority to do so. The officers do not purport to have been enforcing school disciplinary policies as agents of the school. We should not be evaluating the officers’ seizure of C.B. by recourse to a justification that they neither offer as authority for their conduct nor endorse.
II.
The officers’ sole contention, then, is that they had cause to take C.B. into custody because he was “beyond the control of’ his “custodian” under section 601(a). They had no such cause for two reasons: (1).the school is not C.B.’s custodian, and (2) he was not “beyond the control” of his parents, guardian, or custodian.
Subsections (a) and (b) of section 601 provide:
(a) Any person under the age of 18 years who persistently or habitually refuses to obey the reasonable and proper orders or directions of his or her parents, guardian, or custodian, or who is beyond the control of that person, or who is under the age of 18 years when he or she violated any ordinance of any city or county of this state establishing a curfew based solely on age is within the jurisdiction of the juvenile court which may adjudge the minor to be a ward of the court.
(b) If a minor has four or more truan-cies within one school year as defined in Section 48260 of the Education Code or a school attendance review board or probation officer determines that the available public and private services are insufficient or inappropriate to correct the habitual truancy of the minor, or to correct the minor’s persistent or habitual refusal to obey the reasonable and proper orders or directions of school authorities, or if the minor fails to respond to directives of a school attendance review board or probation officer or to services provided, the minor is then within the jurisdiction of the juvenile court which may adjudge the minor to be a ward of the court. However, it is the intent of the Legislature that no minor who is adjudged a ward of the court pursuant solely to this subdivision shall be removed from the custody of the parent or guardian except during school hours.
As Judge McKeown concluded in her dissent to the original panel opinion in this case: “On its face, the term ‘custodian’ does not apply to school officials.” C.B. v. City of Sonora, 730 F.3d 816, 828 n. 2 (9th Cir.2013) (McKeown, J., dissenting). When the California legislature referred to school authorities in section 601, it did so expressly, in subsection (b). That subsection delineates the precise circumstances under which the juvenile court may assert jurisdiction over a minor for misbehavior at school.
Of particular relevance to C.B.’s situation, subsection 601(b) specifies that a minor may come under the juvenile court’s jurisdiction “[i]f ... a school attendance review board or probation officer determines that the available public and private services are insufficient or inappropriate ... to correct the minor’s persistent or habitual refusal to obey the reasonable and *1043 proper orders or directions of school authorities.” Cal. Welf. & Inst.Code § 601(b). C.B.’s “refusal to obey the ... orders or directions of school authorities” spurred his seizure. But there was no “determin[ation]” made by those statutorily empowered to do so that “available ... services [were] insufficient” to correct C.B.’s disobedience. And there certainly was no determination made that C.B.’s disobedience was “persistent or habitual.” Accordingly, the provision of section 601 which specifically applies to schools does not support C.B.’s seizure. The officers do not argue that it does.
The complete absence from subsection (b) of a provision allowing a juvenile court to assert jurisdiction over a minor who “is beyond the control” of school authorities without a proper determination being made by the appropriate persons is telling. As “judicial interpreter^],” we are “call[ed] on ... to consider the entire text, in view of its structure and of the physical and logical relation of its many parts.” Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 167 (2012). When confronted with a general provision and a specific provision that cannot be reconciled, the specific provision prevails. Id. at 183. Here, even if school authorities are properly considered C.B.’s custodian’s during school hours, subsection (b) is the more specific provision, and so must govern. Otherwise, whenever a minor “persistently or habitually refuses to obey the reasonable and proper orders or directions” of school authorities, he could be within the juvenile court’s jurisdiction, leaving subsection (b)’s procedural requirement a nullity.
That subsection (a) does not include minors who are beyond the control of school authorities is confirmed by review of the statute’s legislative history. An earlier version of section 601 expressly applied to minors who were “beyond the control of’ “school authorities.” That version of the statute read in full:
Any person under the age of 21 years who persistently or habitually refuses to obey the reasonable and proper orders or directions of his parents, guardian, custodian or school authorities, or who is beyond the control of such person, or any person who is a habitual truant from school within the meaning of any law of this State, or who from any cause is in danger of leading an idle, dissolute, lewd, or immoral life, is within the jurisdiction of the juvenile court which may adjudge such person to be a ward of the court.
1961 Cal. Stat. 3471 (emphasis added); see also In re David S., 12 Cal.App.3d 1124, 1126, 91 Cal.Rptr. 261 (Ct.App.1970). In 1974, the legislature amended section 601 by deleting “school authorities,” as well as “or any person who is a habitual truant from school within the meaning of any law of this state.” 1974 Cal. Stat. 2629. Section 601 was amended by the same bill that added Article 9 to Chapter 6 of Division 9 of the Education Code, creating “School Attendance Review Boards.” 1974 Cal. Stat. 2624. The legislature’s “intent” “[i]n enacting this article ... [was] that intensive guidance and coordinated community services ... be provided to meet the special needs of pupils with school attendance problems or school behavior problems.” Id.
At the same time,' and as part of the same legislation that created school attendance review boards and that amended section 601, the legislature added section 601.1 to the Welfare and Institutions Code. 1974 Cal. Stat. 2629. That section specifically governed disobedience of school authorities, and required “persistent[ ] and habitualf ] refus[al]” in order for a minor *1044 to be “beyond the control of such authorities”:
(a) Any person under the age of 18 years who persistently or habitually refuses to obey the reasonable and proper orders or directions of school authorities, and is thus beyond the control of such authorities, or who is a habitual truant from school within the meaning of any law of this state, shall, prior to any referral to the juvenile court of the county, be referred to a school attendance review board pursuant to Section 12404 of the Education Code.
(b) If the school attendance review board determines that the available public and private services are insufficient or inappropriate to correct the insubordination or habitual truancy of the minor, or if the minor fails to respond to directives of the school attendance review board or to services provided, the minor is then within the jurisdiction of the juvenile court which may adjudge such person to be a ward of the court.
Id. The legislature thus required that minors who disobey school authorities be referred to a school attendance review board before coming within the juvenile court’s jurisdiction.
In the context of this legislative scheme, it is clear that the deletion of “school authorities” and “habitual truan[cy]” from section 601 was a purposeful excision. The legislature’s considered judgment was that school discipline and attendance problems should go to the school attendance review boards before the child is referred to juvenile court, and that only “persistente ] or habitualf ] refus[al] to obey ... school authorities” would suffice. As already discussed, the present version of 601 embodies this same basic structure.
In sum, “custodian” and “school authorities” have long held separate meanings in this statute. The non-inclusion of minors who are beyond the control of school authorities from section 601(a) was no mistake.
There is still more evidence of the total implausibility of the officers’ interpretation of section 601. The current provision requires that minors adjudged a ward of the court under subsection (b) may only be removed from a parent or guardian during school hours. If “custodian” in subsection (a) includes school authorities, then a minor may be removed from his home if he is adjudged a ward of the court for “persistently or habitually refusing] to obey” school authorities or, as here, for being “beyond the control of’ school authorities — a result plainly contrary to subsection (b)’s considered prohibition against such a practice. Thus, even if custodian is a general term that could, in some circumstances, encompass school officials, the context in which the term appears and the evolution of the statute indicate that it does not serve this role in section 601.
Moreover, all the cases applying 601(a) to minors who disobey or are beyond the control of their custodians refer to persons charged with overall custody of a minor, not school officials. See, e.g., In re Ronnie P., 10 Cal.App.4th 1079, 1083, 12 Cal. Rptr.2d 875 (Ct.App.1992); In re Rita P., 12 Cal.App.3d 1057, 1059, 1060, 95 Cal. Rptr. 430 (Ct.App.1970). Where “custodian” appears elsewhere in the California Welfare and Institutions Code and the cases applying it, review of its use illustrates that it does not refer to schools.
For example, Welfare and Institutions Code section 777 requires a noticed hearing before “changing or modifying a previous order by removing a minor from the physical custody of a parent, guardian, relative, or friend.” Cal. Welf. & Inst. Code § 777 (emphasis added). And section 601(a)’s grouping of custodian with “parents” and “guardian” is replicated in *1045 Ex parte Moilanen, which holds that “[p]arents, guardians or others in whose custody a minor child may be found, are entitled to notice of hearings in proceedings instituted for the purpose of separating children from custodian[s].” 104 Cal. App.2d 835, 842, 233 P.2d 91 (Dist.Ct.App. 1951). School administrators and authorities generally do not have the type of liberty interest in their relationship with their students that carries due process protection.
Finally, a minor, even one identified as a “runner,” cannot properly be deemed “beyond the control of’ his custodian for refusing to come inside after recess on a single occasion. As Judge Paez recounts, examination of the cases interpreting section 601(a) illustrates that this section mostly applies to runaways — minors who are quite literally “beyond the control” of their parents, guardians, or custodians, and for that reason properly may be adjudged a ward of the state. See, e.g., In re Bettye K, 234 Cal.App.3d 143, 150, 285 Cal.Rptr. 633 (Ct.App.1991); In re Ronald S., 69 Cal.App.3d 866, 872, 138 Cal.Rptr. 387 (Ct.App.1977) (“As a matter of fact, the overwhelming number of 601’s are runaways.”); In re D.J.B., 18 Cal.App.3d 782, 787, 96 Cal.Rptr. 146 (Ct.App.1971); In re David S., 12 Cal.App.3d at 1128, 91 Cal. Rptr. 261; In re Rita P., 12 Cal.App.3d at 1059, 95 Cal.Rptr. 430. Construing “beyond the control of’ a parent, guardian, or custodian to mean a single incident of misbehavior, such as sitting on a bench nonre-sponsively and refusing to come indoors, would eviscerate the critical requirement that out-of-control conduct amounting to disobedience must be “persistent! ] or ha-bituad ]” to fall under 601(a)’s purview.
In sum, section 601(a) has not been applied to include and does not include a single act of defiance of school officials. The officers simply had no cause to take C.B. into custody under this provision.
III.
Nor does qualified immunity insulate the officers from C.B.’s Fourth Amendment claims.
“A police officer; who violates another’s constitutional right, will receive qualified immunity from suit under 42 U.S.C. § 1983 if the right the officer violated was not protected by clearly established law at the time he acted.” A.D. v. California Highway Patrol, 712 F.3d 446, 449 (9th Cir.2013). “To be clearly established, the ... law only must have been sufficiently clear that a reasonable official would understand that what he [was] doing violated] [a constitutional] right.” Id. (internal quotation marks omitted, all but first alteration in original).
“By defining the limits of qualified immunity essentially in objective terms,” the aim is not to “license ... lawless conduct.” Harlow v. Fitzgerald, 457 U.S. 800, 819, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To the contrary: “Where a reasonable official could be expected to know that certain conduct would violate ... constitutional rights, he should be made to hesitate.” Id. The standard of objective legal reasonableness thus acts to safeguard “[t]he public interest in deterrence of unlawful conduct and in compensation of victims,” without tying the hands of officials acting in situations “in which clearly established rights are not implicated.” Id.
The officers do not argue that, because he was a student, C.B. had no Fourth Amendment protections. Nor could they: Students do not “shed their constitutional rights ... at the schoolhouse gate.” Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); see T.L.O., 469 U.S. at 336, 105 S.Ct. 733. Thus, the clearly established law at issue in this case is the Fourth Amendment right to be free from unrea *1046 sonable seizures and, more particularly, its individualized suspicion requirement. This constitutional guarantee protects “the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.” Terry v. Ohio, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
When law enforcement officials effect a seizure of a person without a warrant, as the officers did here, the reasonableness requirement generally is satisfied if probable cause exists to believe the person is violating the law. Skinner v. Railway Labor Executives’ Ass’n, 489 U.S. 602, 624, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989); Beier v. City of Lewiston, 354 F.3d 1058, 1071 (9th Cir.2004). But a warrantless seizure may, in narrow circumstances, survive Fourth Amendment scrutiny where probable cause does not exist. T.L.O., 469 U.S. at 340, 105 S.Ct. 733. In such circumstances, involving, for example, the need to investigate and deter possible criminal activity, seizures based on “reasonable” suspicions not rising to the level of probable cause satisfy the Fourth Amendment. Terry, 392 U.S. at 22, 88 S.Ct. 1868.
That the Fourth Amendment guarantee is secured in general terms does not assure the officers immunity: “[Officials can still be on notice that their conduct violates established law even in novel factual circumstances.” Hope v. Pelzer, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). And while the general terms of the Fourth Amendment’s proscription against unreasonable seizures call out for further specificity, Ashcroft v. al-Kidd, - U.S. -, 131 S.Ct. 2074, 2084, 179 L.Ed.2d 1149 (2011), case law provided this further specificity by the time of C.B.’s 2008 seizure.
By 2008, the law was clearly established that the constitution requires police officers to have some legal cause to take children into custody. Crowe v. County of San Diego held that a police officer was not entitled to qualified immunity for a claim that the 1998 detention of two children after the murder of the children’s sister violated the children’s Fourth Amendment rights, as the officer “failed to provide any justification” for the children’s seizure, 608 F.3d 406, 439 (9th Cir.2010); Henderson v. Mohave County rejected law enforcement’s assertion that qualified immunity protected them against a section 1983 suit for taking a child into custody, even for the purpose of transporting the child from one parent to another, where there was “no excuse” for the officers’ seizure of the child, 54 F.3d 592, 595 (9th Cir.1995).
Here, the officers acknowledged that their seizure of C.B. amounted to an arrest. In assessing the circumstances under which a law enforcement officer may take a child into temporary custody for being “beyond the control” of a parent, guardian, or custodian, the California legislature arrived at a reasonable cause standard. Cal. Welf. & Inst.Code § 625(a). Thus, when law enforcement officers have reasonable cause to believe a child falls within the ambit of section 601, they may hold the child in temporary detention. Id. As the officers explained during their testimony, this temporary custody could involve transferring custody to the probation department or to a private shelter. Cal. Welf. & Inst.Code § 626.
In my view, the police officers could not reasonably have believed that they had cause, reasonable or otherwise, to take C.B. into custody under section 601(a). I will therefore assume that the state statute’s adoption of a reasonable, rather than probable, cause standard, is consistent with the constitutional guarantee, and will further assume that “reasonable cause” is less than “probable cause,” which is not *1047 self-evident. Still, if the officers could not reasonably have believed some cause existed under section 601(a), qualified immunity offers them no protection.
No reasonable officer would have believed that' he had any cause to take C.B. into custody pursuant to section 601. The officers were told that that day C.B. was “out of control,” a runner who- had not taken his medication, and, in response to questioning, that he was not wanted on school grounds. But Sonora Elementary obviously was not C.B.’s parent, guardian, or custodian: For the reason I have explained, there is just no sensible reading of the statute otherwise.[3]
Moreover and separately, the officers’ account assuredly did not provide reasonable cause to believe C.B. “persistently or habitually refuse[d] to obey ... reasonable . and proper orders or directions.” Cal. Welf. & InstCode § 601(a). Nor did it provide reasonable cause to believe that C.B. was “beyond the control” of anyone. California law is clear that a single act of defiance is generally insufficient to find that a minor is beyond the control of a parent, guardian, or custodian absent some extraordinarily serious act of defiance. See Paez, J., Opin. at 1028-29 (citing In re David S., 12 Cal.App.3d at 1128, 91 Cal. Rptr. 261 (holding that a minor who had told his mother he would be spending the weekend with friends about 40 miles from home but who was actually found about 600 miles away from home attempting to cross the border into Mexico was beyond the control of his parents) and In re Bettye K, 234 Cal.App.3d at 149, 285 Cal.Rptr. 633).
In short, there was no cause, probable, reasonable, or otherwise, to take C.B. into temporary custody under section 601, and no reasonable officer could have believed otherwise.
As the defense proffered by the officers in this case confirms, law enforcement officers enforce the law, not run-of-the-mill school discipline.[4] And law enforcement officers alone are authorized to take a child into temporary custody upon reasonable cause to believe the child is in violation of section 601(a). Cal. Welf. & Inst-Code § 625. Because there was no cause to believe C.B. could be detained under these Welfare Code provisions, and no reasonable officer could believe that there was, I would affirm the judgment for C.B. on these grounds. I would not manufacture a T.L.O.-based law-enforcement-officers-as-school-disciplinarians defense never argued to the jury, or us.

. That such a seizure would have required probable cause was clearly established and beyond dispute by 2008. See Bias v. Moynihan, 508 F.3d 1212, 1220 (9th Cir.2007).

. The officers offered no objection to this instruction.

. While there was testimony from the defense expert witness that the police officers were trained otherwise, flatly erroneous training does not establish qualified immunity. See Cal. Att'ys for Criminal Justice v. Butts, 195 F.3d 1039, 1049-50 (9th Cir. 1999).

. T.L.O. notes this distinction. 469 U.S. at 341 n. 7, 105 S.Ct. 733.